MILES B. RIGGS, as Administrator, etc., Respondent, *v.* THE AMERICAN TRACT SOCIETY, Appellant.

95  503
115  504
95        503
75 AD¹337

To set aside a gift of property because of unsoundness of mind of the donor, it is not essential to show that he was an idiot or an imbecile at the time ; it is sufficient to show that he was laboring under a delusion out of which he could not be reasoned, which led him to make the gift, and which so took possession of his mind that he could not act upon the subject sensibly.

If such delusion exist upon one subject the person, as to that, is of unsound mind, although, in regard to other subjects, he may reason and act intelligibly.

Where, therefore, it appeared that a person, under the influence of a belief that his wife and children had conspired together to injure him, which had no foundation in fact and was merely an insane delusion, for the purpose of preventing them from inheriting, gave a large portion of his estate to defendant under an arrangement that it was to pay him interest thereon during his life, this arrangement having been advised by an agent of the defendant, who well knew his mental condition, *held*, that the gift was invalid and that defendant was properly required to restore the property; also, that it was immaterial to inquire whether restoration could be made without impairment of defendant's estate.

As to whether it was essential to show that defendant was chargeable with knowledge of the donor's condition of mind, *quære.*

(Argued March 17, 1884; decided April 15, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of plaintiff, entered upon an order made January 25, 1883, which denied a motion for a new trial and directed judgment on a verdict, exceptions taken during the trial having been ordered to be heard, at first instance, at Special Term.

This action was brought to recover back money alleged to have been given defendant by Ira Riggs, plaintiff's intestate, he being at the time of unsound mind.

The case, upon a former appeal, is reported in 84 N. Y. 330.

It appeared that defendant, on receipt of the moneys, gave back an agreement to pay Riggs the interest on the sums received during his life, and after his death to his sister and widow during their lives. Defendant paid interest to Riggs

during his life; his sister died shortly after him. Defendant paid no interest after his death to any one. The widow, after plaintiff's appointment as administrator, gave to him a written consent that he might surrender the agreement to pay interest. Plaintiff, before the commencement of the action, tendered these, with the consent, to defendant and demanded a return of the moneys.

The further material facts are stated in the opinion.

*Howard Payson Wilds* for appellant. When it is sought to avoid a contract of gift on the ground of mental incapacity, the burden of establishing it rests on the party by whom it is alleged. (*Delafield* v. *Parish,* 25 N. Y. 9, 97; *Gardner* v. *Gardner,* 22 Wend. 526; *Brown* v. *Torrey,* 24 Barb. 583; *Jackson* v. *King,* 4 Cow. 207; Wharton & Stille's Med. Jur., § 251.) The term "unsound mind" imports a total deprivation of sense. (*Foster* v. *Means,* 1 Speer's Eq. 569; Ordronaux's Jud. Asp. of Insanity, 359; *Stewart* v. *Lispenard,* 26 Wend. 225; *Blanchard* v. *Nestle,* 3 Denio, 37; *Petrie* v. *Shoemaker,* 24 Wend. 85; *Osterhout* v. *Shoemaker,* 3 Denio, 1, 37, n.; *Jackson* v. *King,* 4 Cow. 207; *Clark* v. *Fisher,* 1 Paige, 171.) It is only the belief of facts which no sane person would believe, which is insane delusion. (Taylor's Med. Jur. [6th ed.] 626; *Dew* v. *Clark,* 1 Add. 279; 3 id. 79; 2 Greenl. on Ev., § 371 a; *Frere* v. *Peacock,* 1 Rob. Ecc. 442, 445; *Fulbeck* v. *Alison,* 3 Hagg. 527; Ordronaux's Jud. Asp. of Ins. 373; 1 Redf. on Law of Wills, 67; *Phillips* v. *Chater,* 1 Demorest's Surr. Ct. 533; *Boughton* v. *Knight,* 3 P. & D. 68; 2 Greenl. on Ev., § 371 a; *Frere* v. *Peacock,* 1 Rob. Eccl. 422; 2 Greenl. on Ev., § 689 n.; *Am. S. F. Soc.* v. *Hopper,* 34 N. Y. 619; *Clapp* v. *Fullerton,* id. 190; *Jackson* v. *Jackson,* 39 id. 157; *Wait* v. *Breeze,* 18 Hun, 404; *Phillips* v. *Chater,* 1 Demorest, 535.) As the intestate was apparently capable of managing his property and affairs, plaintiff should have been nonsuited. (1 Wharton & Stille's Med. Jur., § 2; Ray's Med. Jur. of Insanity, 135; *Dennett* v. *Dennett,* 44 N. H. 531; *Creagh* v. *Blood,* 2 J. & L. 509;

Ordronaux's Jud. Asp. of Ins. 308; *Jackson* v. *King*, 4 Cow. 207.) The moneys transferred to the defendant cannot be recovered by the intestate's administrator on any less evidence as to the intestate's unsoundness of mind, than would have been required to be shown for the appointment of a committee, or to have avoided the transfers *inter vivos*. (*Matter of Barker*, 2 Johns. Ch. 237; Willard's Eq. Jur. 680; *Matter of Morgan*, 7 Paige, 237; *Matter of Shaul*, 40 How. Pr. 204; 1 Broom & Hadley's Com. 714; Wharton & Stille's Med. Jur., § 101; Ordronaux's Jud. Asp. of Insanity, § 21, p. 37; *Matter of Barker*, 3 Johns. Ch. 237; *Matter of Morgan*, 7 Paige, 236; *Matter of Mason*, 3 Edw. 380; 3 Barb. Ch. Pr. 659; 3 3 T. & S. 420; Nix. Forms, 192; Ordronaux's Jud. Asp. of Insanity, 492; *Jackson* v. *King*, 4 Cow. 207, *Person* v. *Warren*, 14 Barb. 494; *Osterhout* v. *Shoemaker*, 3 Denio, 37 n.; *Sprague* v. *Duell*, 11 Paige, 480; *Odell* v. *Buck*, 21 Wend. 142; *Blackford* v. *Christian*, 1 Knapp, 73; *Osmond* v. *Fitzroy*, 3 P. Wms. 30; Fonblanque on Equity, 62; *Person* v. *Warren*, 14 Barb. 488; *Petrie* v. *Shoemaker*, 24 Wend. 85; *Davis* v. *Culver*, 13 Dow. Pr. 62; *Ball* v. *Mannen*, 3 Bligh [N. S.], 1; 1 Dow's Pr. C. [N. S.] 380; *Canfield* v. *Fairbanks*, 63 Barb. 461; Perry on Trusts, 630.) It is incumbent on the party who seeks to avoid a transaction by an insane person to allege and prove that the other party had knowledge of the insanity. (*Young* v. *Stevens*, 48 N. H. 133; *Harrison* v. *Richardson*, 1 M. & R. 504; *Ingrahan* v. *Baldwin*, 9 N. Y. 48; 12 Barb. 9; 21 N. Y. 48; 2 Jones on Mortgages, § 1510; 2 Chitty's Pl. 436, ed. of 1876; Bullen & Leake's Forms, 354; 2 Abbott's Forms, 41; *Behrens* v. *McKenzie*, 23 Iowa, 343; *Beals* v. *Lee*, 10 Barr, 56; *Person* v. *Warren*, 14 Barb. 488; *Loomis* v. *Spencer*, 2 Paige, 153; *Dane* v. *Kirkwall*, 8 C. & P. 679; *Moss* v. *Tribe*, 3 F. & F. 297.) Default of duty by heirs at law is ground of estoppel. (*Scanlon* v. *Cobb*, 85 Ill. 296; *Beggan* v. *Greene*, 30 Am. Rep. 77; *Thompson* v. *Blanchard*, 4 N. Y. 303; *Gregg* v. *Wells*, 10 A. & E. 90.) In order to vitiate a contract the knowledge of the lunacy or incapacity must be not merely actual, but presumably suffi-

cient, from circumstances known to the other contracting party, to lead him to a reasonable conclusion that the person with whom he is dealing is of unsound mind. (*Hassard* v. *Smith*, 6 Ir. Eq. R. 429; *Beals* v. *Lee*, 10 Barr, 56; *Wilder* v. *Weakley*, 34 Ind. 181; Ordronaux's Jud. Asp. of Insanity, 302; *Brown* v. *Joddrell*, 1 M. & M. 105; *Dana* v. *Kirkwall*, 8 C. & P. 679; *Matter of Beckwith*, 3 Hun, 443; *Loomis* v. *Spencer*, 2 Paige, 158; *Price* v. *Berrington*, 7 Eng. L. & Eq. 254; *S. C.*, 15 Jur. 999; 3 M. & G. 486; *Sprague* v. *Duel*, Clark's Ch. 90; 11 Paige, 480; *Mut. L. Ins. Co.* v. *Hunt*, 79 N. Y. 541; *Allen* v. *Berryhill*, 27 Iowa, 534; Abbott's Trial Ev. 733.) In any contract beneficial to a lunatic, it has been held that the nature of the contract may be taken as *prima facie* evidence of a lucid interval, which is to say in fact that the law will treat a sane act as presumptive evidence of a sane mind. (*Moulton* v. *Camroux*, 4 Exch. 17; *Cartwright* v. *Cartwright*, 1 Phill. 90; *White* v. *Driver*, id. 84; *Williams* v. *Goode*, 1 Hagg. 579; *Macadam* v. *Walker*, 1 Dow. Pr. C. 148; *Booth* v. *Blundel*, 19 Ves. 508; *Neil* v. *Morley*, 9 id. 478; Ordronaux's Jud. Asp. of Ins. 304, 309.) The transfers of money by the intestate to the defendant were not without consideration; being made in view of a certain contract for payment of money by the defendant to the intestate and his widow and sister, and, therefore, were not simple gifts. (*Doty* v. *Wilson*, 4 N. Y. 584; *Hillis* v. *Hills*, 8 M. & W. 404; *Blount* v. *Burrow*, 4 Brown's Ch. 72.) Equity and good conscience do not require repayment where it has been even in part performed, and the other party has derived some benefit; and by the recovery the parties cannot be placed in the exact situation in which they originally were when the contract was entered into. (1 Chitt. Pl. 368; *Peters* v. *Gooch*, 4 Blackf. [Ind.] 515; *Moulton* v. *Camroux*, 2 Exch. 487; 4 id. 17; *S. C.*, 18 L. J. Exch. 356; *Elliot* v. *Ince*, 7 De G., M. & G. 475–487; *State B'k* v. *McCoy*, 19 Smith [Penn.], 204; *Nace* v. *Boyer*, 6 Casey, 99; 2 Kent's Com. [12th ed.] 451, note; *Matter of Beckwith*, 3 Hun, 445; *Lincoln* v. *Buckmaster*, 32 Vt. 652; *Young* v. *Stephens*, 48 N. H. 133; *Mussellman* v. *Cravens*,

47 Ind. 1; 1 Wharton & Stille's Med. Jur., § 8, ed. of 1873; Browne's Med. Jur. of Insanity [2d ed.], § 27; *Behrens* v. *McKenzie*, 23 Iowa, 343; *Dicken* v. *Johnson*, 7 Ga. 491; *Lancaster Co. Nat. B'k* v. *Moore*, 78 Penn. St. 412 ; *Forman* v. *Whitney*, 2 Abb. Ct. of App. Dec. 163 ; *Matter of Gilbert*, 3 Abb. N. C. 222; *May* v. *May*, 109 Mass. 254.)    A witness, not a professional expert, is not competent to express a general opinion upon the question whether an individual was 'sane or insane (except in cases of wills or deeds). (*Clapp* v. *Fullerton*, 34 N. Y. 190; *O'Brien* v. *People*, 36 id. 282 ; *Real* v. *People*, 42 id. 270 ; *De Witt* v. *Barley*, 9 id. 371 ; 17 id. 347; *People* v. *Lake*, 12 id. 358; Wharton & Stille's Med. Jur., § 272.)    The intestate's widow was a necessary party. (*Nevins* v. *Dunlap*, 33 N. Y. 676; *Gen. Mut. Ins. Co.* v. *Benson*, 5 Duer, 168; *Penman* v. *Slocum*, 41 N. Y. 53; *Culullu* v. *Walker*, 16 La. Ann. 198; *Quisenberry* v. *Artis*, 1 Duval [Ky.], 30; *Cramer* v. *Benton*, 60 Barb. 216 ; *S. C.*, 4 Lans. 295 ; *Sheppard* v. *Sheppard*, 7 Johns. Ch. 57; *Westerlo* v. *Dewitt*, 36 N. Y. 340, 343, 347.)

*H. V. Howland* for respondent.  The delusion under which the intestate labored as to his family was sufficient to defeat his gifts to defendant. (*Stanton* v. *Weatherwax*, 16 Barb. 259 ; *Seamen's Friend Soc.* v. *Hopper*, 33 N. Y. 619 ; *Banks* v. *Goodfellow*, L. R., 5 Q. B. 549 ; 8 Am. Rep. 185, note; *Johnson* v. *Moore's Heirs*, 1 Litt. 272 ; *Lucas* v. *Parsons*, 24 Ga. 640 ; *Boyd* v. *Elby*, 8 Watts, 70 ; *Cotton* v. *Ulmer*, 6 Am. Rep. 703 ; *Lathrop* v. *Am. B'd of Foreign Missions*, 67 Barb. 590.)   The fact that the defendant is a charitable corporation, and received the money and paid it out for charitable purposes, without any knowledge or notice of the intestate's insanity (if such had been the fact) does not exempt it from liability to refund the money. (*Riggs* v. *Am. Tract Soc.*, 19 Hun, 481; 84 N. Y. 330; *Doty* v. *Willson*, 47 id. 580; *Hills* v. *Hills*, 8 M. & W. 404 ; *Blount* v. *Barrow*, 4 Brown's Ch. 73.)   Where the insanity is known to the other contracting party, or where he has information which would lead a prudent man to such knowledge, the con-

tract will not be held valid. (*Lincoln* v. *Buckmaster*, 32 Vt. 752; *Henry* v. *Fine*, 23 Ark. 417; *Lancaster B'k* v. *Moore*, 78 Penn. St. 407; *Matthiessen, etc., Co.* v. *McMahon*, 38 N. J. L. 536; *Moss* v. *Tribe*, 3 F. & F. 297; *Bevan* v. *Mc-Donnell*, 10 Exch. 184; *Crawford* v. *Scovell*, 94 Penn. St. 48.) In this view it is immaterial whether the defendant can be placed *in statu quo* or not. (*Crawford* v. *Scovell*, 94 Penn. St. 48; 39 Am. Rep. 766.) Neither the administrator nor the widow had the power to affirm or to disaffirm the contract with defendant. (*Jefford* v. *Ringgold*, 6 Ala. 544; *Shropshire* v. *Burns*, 46 id. 108; *Nelson* v. *Eaton*, 1 Redf. 498; 2 Hilliard on Real Property, 431; *Zouch* v. *Persons*, 3 Burr. 1794; *Bozeman* v. *Browning*, 31 Ark. 364.) On the question of mental condition, whether raised as to unsoundness or undue influence, the conduct and declarations of the testator, both before and after execution of his will, are competent to show capacity or incapacity, if they tend to show its existence at the time of execution, but not otherwise. (Abbott's Trial Ev. 115; *Waterman* v. *Whitney*, 11 N. Y. 157; *Kinne* v. *Kinne*, 9 Conn. 104; *Shaler* v. *Bumstead*, 99 Mass. 112; *Boylan* v. *Meeker*, 4 Dutch. 274.) It was proper for the witness to state how his conduct and language impressed him at the time, whether sane or insane, rational or irrational. (Abbott's Trial Ev. 117, 118; *Clapp* v. *Fullerton*, 34 N. Y. 190; *Hewlett* v. *Wood*, 55 id. 634.)

DANFORTH, J. On a former occasion we were satisfied that upon the allegations of the complaint a recovery might be had. (84 N. Y. 330.) The facts then admitted to be true are now established by the finding of a jury. A verdict has displaced the demurrer. In order to succeed, therefore, the appellant must show that an error of law was committed upon the trial, either in receiving evidence or in submitting it to the jury as sufficient for their consideration. Upon the complaint there was but one question, whether at the time of his transactions with the defendant, Ira Riggs, the intestate, was of unsound mind. The trial was so conducted, however, and the case given

to the jury in such manner, as to involve two issues : first, his competency to make the donations stated in the complaint, and if incompetent, then as the gifts were in fact executed, second, whether the defendant received them with knowledge of his condition, or with such notice as put it on inquiry in regard thereto.

The donations were made in 1871, 1872 and January, 1874, amounting in all to $4,000. Mr. Riggs died in March, 1874, at the age of eighty-two years. As to his mental condition the evidence was all one way. None was offered by the defendant, and that given by the plaintiff stood uncontradicted. It tended to show that for many years before his, death, he was of eccentric habits and manners, but had always had the management of his own affairs ; that at the time of the gifts in question, and for a long time before, and until his death, he was the subject of insane delusions in regard to his wife and children. He entertained the belief that there was a conspiracy between them to break up his family, destroy his authority over them, deny to him obedience and regard, and in that respect as he said, "rebel against the laws of God and man." He cherished the idea that they had combined to injure him personally, in reputation and in property and even to poison him to death, that they were his enemies and very bad people, and because of this, that they were not proper recipients of any of his estate. . That he was sincere in his belief of these things, and that there was no foundation for that belief, might well be inferred from the testimony. It was also sufficient in the estimation of the trial judge and the General Term.

Upon the second proposition there was evidence. It tended to show that with knowledge of the donor's feelings toward his family, and his apprehensions that any will he might make which diverted his property from them, would be successfully contested on account of his incapacity, an agent of the defendant (Mr. C.) advised him that he could dispose of his property during his life-time, and that "it was better to do so than to let it remain as a source of litigation after his death." Mr. C. himself testified that in the summer of 1871, Riggs told

him he had " given by will a portion of his property to the defendant, but apprehended his children would try to break his will, or would break it, and he wanted to fix it in some way so they would not succeed." The witness adds, " I asked, if such was his fear, why not give what he intended to give during his life-time. He said he needed the use of the money." Then the agent suggested that the defendant would rather receive what he intended to give, and pay interest on it during his life-time, than run the risk of a litigation. They had other interviews and in some of them Mr. Riggs brought up his family matters ; Mr. O. says, " I cannot tell whether he did so in every interview, or in which. He spoke of them as disobedient — the children." The witness cut short his visits when Riggs began to talk of them, and has since tried to forget what he said. " His words," as the witness testifies, " were disagreeable and he did not wish to retain them," or ".that they should leave any impression upon his mind." He did, however, discover peculiarities in Mr. Riggs, and " got the impression," he says, " that they indicated a morbid condition of mind in regard to his feelings toward his family " — an " unhealthy " and perhaps a " diseased condition," and whether he had that impression on the first visit, he adds, " I do not say, nor that I did not." There is more evidence bearing upon this point, and much more upon the first — enough upon both for the attention of the jury, and upon which they were justified in finding unsoundness of mind on the part of the donor, and that the defendant both knew and took advantage of it. It would have been error, therefore, for the trial judge to have taken the case from them. But his charge was very favorable to the defendant. He made it the law of the case that the plaintiff could not recover unless, first, Riggs was at the time of the transaction, of unsound mind ; second, that the defendant's agent had notice of his condition ; and he told the jury that the plaintiff could not recover if either proposition was found in favor of the defendant. If the verdict had been the other way, the plaintiff might have had cause for complaint as to the

second proposition.   Certainly the defendant could ask nothing more.

But the greater contention of the learned counsel for the appellant appears to turn upon the significance of the phrase "unsound mind."   In his view, however great or numerous the delusions of a party may be, and however closely connected with the act in question, it will not be invalidated unless there has happened to him a "total deprivation of sense."   In these words, therefore, he asked the judge to charge the jury.   The court did not err in refusing the request.   A person answering such description would be an idiot or an imbecile, depending upon his natural condition, or his becoming so through accident or great age.   But one may be of unsound mind, and yet be neither an idiot nor an imbecile.   When it is agreed in so many words that a person is of "unsound mind," and nothing more appears, the party in whose favor the concession is made may well claim that the unsoundness is total as the plaintiff successfully did on the first appeal.   The phrase, however, is satisfied when it is shown that the person whose act is challenged, was at the time of its commission, laboring under a delusion, and was led to perform the act by a belief "that something existed which had no existence whatever but in his own heated imagination," and out of which he is incapable of being reasoned.   In such a case he is said to be mad or insane upon the subject involved in the act.

The trial judge adopted this view.   He told the jury that sanity was to be presumed; that the burden was on the plaintiff to show that Riggs was of unsound mind; that there was no evidence that he was wholly devoid of sense, and confined their inquiry to the question whether he was affected with insane delusions in regard to the persons who were the natural objects of his bounty, and who, unless other disposition of his property was made, would at his death receive it, and left them to say, upon the evidence, whether that delusion, if there was one, "so took possession of his mind that he could not act upon that subject with sense."   He was careful to instruct the jury to discriminate between perverse opinions, violence of manner,

ill-temper, moroseness, severity, austerity, eccentricity, or even brutality toward his wife and children, and alienation of mind.

The law was well stated. If delusion existed upon one subject, he was as to that of unsound mind, although in regard to other subjects he might reason and act like a rational man. (*Seamen's Friend Society* v. *Hopper*, 33 N. Y. 619; *Boughton* v. *Knight*, L. R., 3 Prob. and Div. 68; *Clapp* v. *Fullerton*, 34 N. Y. 190; *Dew* v. *Clark*, 3 Add. Eccl. 79; 1 Story on Contracts, 17.)

The intestate seems to have been occupied at all times with schemes for getting his property so disposed of that his family should have none of it. He was advised and felt that a will could not stand against them. The defendant's agent appears to have been of the same opinion, and there can be no doubt that the gifts were the result of his device, and that it was resorted to by the intestate under the influence of a delusion which left him no mind of his own — no sane, therefore no sound mind. The defendant is bound by the knowledge of its agents, and must be deemed to have entered upon the transaction at its peril. In such a case it is not material to inquire whether restoration can be made without impairment of its own estate.

Errors are alleged in admitting evidence: first, of Lyon: "In the first interview, state how his conversation, his conduct and appearance impressed you, whether as the conduct, appearance and language of a sane or insane man?" So far as the answer of the witness applied to the question, it amounted to nothing. "I don't know," he says, "that I entertained any particular view upon the subject at that time, whether his conduct was that of a sane or insane man." The next question called the attention of the witness to the conduct and language of the donor, already given by him, and asked whether at the time they impressed him as rational or irrational. The objection to this question was a general one, and if the question is defective at all, it is in form, not substance. (*Dewitt* v. *Barley*, 9 N. Y. 371.) The third question to which we are referred was not objected to at the trial.

Some other propositions are argued by the learned counsel

for the appellant, but in the view we have already taken of the case and the charge as actually made, they become unimportant.

We think the plaintiff was entitled to his judgment and it should be affirmed, with costs.

All concur.

Judgment affirmed.