In the Matter of the Estate of LENA BREMER, Deceased.

Surrogate's Court, Westchester County, October 3, 1935.

*O. H. Droege*, for the executors.

*Larkin, Rathbone & Perry*, for the Central Hanover Bank and Trust Company, objectant.

*Stewart & Shearer*, for the United States Trust Company of New York.

*Pliny W. Williamson*, special guardian.

SLATER, S. The executors were granted a reargument of the matters decided by the court in its opinion of June 20, 1935 (156 Misc. 160). The reargument was had on September 13, 1935. It is claimed:

1. That the court overlooked the authorities in respect to legacies bearing interest from the date of the death of the deceased;

2. That the court erred in incorporating in the will the provisions of the trust agreement dated March 1, 1932;

3. That interest should be allowed upon the legacy of Henry Bremer only from a period beginning seven months after the date of the death of the deceased;

4. That the court did not take into consideration the fact that the legatee had been " otherwise provided for " by virtue of the *inter vivos* trust created for the incompetent son by the decedent, his mother.

The gift to the incompetent son under the will was not made as a separate gift, but through incorporation by reference to the *inter vivos* trust (*Matter of Rausch*, 258 N. Y. 327) by adding to the corpus of the trust the sum of $15,000 " in accordance with and subject to all the terms, conditions and provisions of such Trust Agreement. *Said bequest of Fifteen thousand ($15,000.00) Dollars is to be incorporated into and become a part of said Trust Estate*, conveyed by me to said Trustees, and is to be held and administered by said Trustees in all respects in accordance with the terms and conditions of the agreement created in said Trust Agreement." The distinction is found here. A money legacy for support and maintenance carries interest from death. If there is other and adequate provision, interest runs from a date seven months from the issuance of letters. If the gift is added to " such other provision," its effect follows the terms and conditions of such other provision, in this case the trust agreement.

In *Matter of Bird* (241 N. Y. 184, 187, 188) the court said: " When is a trust created? The answer depends upon the intentions of the testator as expressed in his will — not upon the action or nonaction of executor or trustee — not upon their caprice or diligence. *It may* be upon the testator's death. *It is* if there is nothing to indicate a contrary design. Where a sum is left in trust with the

direction that the income be paid to A, then A is entitled to income from the death of the testator. (*Cooke* v. *Meeker*, 36 N. Y. 15; *Matter of Benson*, 95 N. Y. 503, 511; *Matter of Stanfield*, 135 N. Y. 292.) The trust certainly is created from the date when the *cestui* becomes entitled to its benefits."

In *Cooke* v. *Meeker* (*supra*, at p. 22) the court said: " The authorities would seem abundant, therefore, to sustain the doctrine, that when a sum is left in trust, with a direction that the interest and income should be applied to the use of a person, such person is entitled to the interest thereof from the date of the testator's death. * * * All the authorities and *dicta* concur, that, under such circumstances, the accruing interest upon the securities, from the time of the death of the testator, should go for the use and maintenance of the beneficiary."

The thirteenth paragraph of the trust agreement indicates that the donor, in this case the mother of the incompetent, was not sure that the income of the corpus of the trust would be sufficient for the support and maintenance of her son because she provided that " in the event that the income realized from the Trust Estate is not sufficient to provide properly for the support or medical attention of my son, Henry, then I authorize my Trustees at their sole discretion, to apply from time to time a portion of the principal of said Trust Estate to his support and maintenance."

We must bear in mind that the *inter vivos* trust was originally created on December 1, 1930, and superseded by a new agreement on March 1, 1932. The will was executed March 5, 1932. The trust agreements and the will were executed during a period of great financial stress and difficulties which brought in their path losses of corpus as well as income. Evidently the mother was apprehensive, in view of the times, as to whether the income of the original trust estate would be sufficient and, therefore, intended to add to the corpus and, consequently, to the income. The terms of the trust agreement carried income from its date.

" Otherwise provided for " means more than a nominal provision or one that the testatrix would regard as plainly insufficient. (*Matter of Neil*, 238 N. Y. 138.) Did the mother in this case believe that the income should be supplemented by the legacy of $15,000 to accomplish the purpose she had in mind? The answer is that she did. It is the intent of the testatrix that we must ascertain and apply.

The cases cited by the objectants in respect to the legacy bearing interest from the date of the death of the decedent are not in point. In the instant case the *cestui* is not an infant, but an adult incompetent.

The contention that, until the exercise by the executors of the discretion given to them to " allot to any legacy any specific security or securities or other property belonging to my estate," there was no trust fund in existence, is without merit. Here there is no postponement of the creation of the trust. The eleventh paragraph of the will provides only that the executors have discretion in the allotment to any legatee of certain specific securities or other property and may value or appraise it and not be bound by market values. There is nothing said in the will to take it without the general rule that the trust speaks from the death of the decedent.

It is also claimed that the legacy is only a gift of principal. It is a gift of principal with an implied gift of income. That is what the mother intended — that the incompetent should have the income from the principal from the date of her death.

It has also been claimed that there is an inequality in the distribution of the property of the decedent among her four children. If this estate had not been visited with losses the same as other estates have been, this question would not have arisen. The setting up of the *inter vivos* trust during the mother's lifetime and the falling off in value of the securities of the mother's estate may create a gift for the incompetent boy greater than that of the other children. While this is unfortunate for the children, other than the incompetent boy, there is no reason why the rule of law should be changed.

The former decision is affirmed.

Submit decree on notice.