George Beisheim, Jr., J.
On September 19, 1963, Marie H. Maeder created an inter vivos trust naming her son, John Maeder, income beneficiary and individual trustee, and the Chase Manhattan Bank, now the Chase Manhattan Bank, National Association, as corporate trustee, and conveyed to said trustees certain property described in a schedule annexed to the indenture of trust. The trustees were to hold the principal of said trust during the life of said John Maeder, *165 and upon Ms death (subject to a power of appointment in John Maeder which, for the purposes of the matter before the court, may be disregarded) transfer the said principal to the descendants • of the said John Maeder, if any, then living, or if he shall have died leaving no descendants surviving him, the trustees shall transfer and add said principal to another inter vivos trust simultaneously created with the aforesaid trust in which Marie H. Maeder named her daughter, Marie M. Miles, as income beneficiary and trustee, and the Chase Manhattan Bank as corporate trustee. The cMldren of Marie M. Miles — John S. Reid, Jr. and Clayton J. M. Miles — are the remaindermen of said trust.
John Maeder died without issue on April 20, 1970, and the petitioner, his surviving corporate trustee, seeks a judgment pursuant to article 77 of the CPLR, (1) judicially settling the account of proceedings of the Chase Manhattan Bank, National Association, and John Maeder, deceased, as trustees, (2) construing said trust to determine whether or not petitioner should have included, in computing the amounts payable to John Maeder pursuant to his right annually to withdraw 5% of the aggregate value of assets of the trust, the amount payable to the trust from the Estate of Marie H. Maeder, (3) determining whether or not the estate of John Maeder is entitled to the sum of $50,000, an invasion of principal which allegedly had been approved by petitioner prior to the death of John Maeder but which was not paid to him during his lifetime, (4) fixing and allowing the commissions of petitioner, and (5) granting and allowing such other and further relief as to the court may seem just and proper.
The interested parties in this proceeding, in addition to the petitioning corporate trustee, are Commercial Bank at Daytona Beach, administrator c.t.a. of the estate of John Maeder; Marie M. Miles, individually and as trustee and income beneficiary of the trust created by Marie H. Maeder afore-mentioned; and John S. Reid, Jr. and Clayton J. M. Miles, the children of Marie M. Miles. All of said individual parties are over the age of 21 years except Clayton J. M. Miles, for whom a guardian ad litem in this proceeding has been appointed.
The court judicially settles the account as filed, except that it is directed that a 2% stock dividend on 5% shares of Columbia Broadcasting System common stock shall be allocated to income, not capital. Petitioner’s commissions as set forth in Schedule H of the account are so fixed and allowed.
*166 This leaves for determination the two items involving a construction of the trust enumerated as items 2 and 3 in the relief sought by the petitioner; (2) whether or not petitioner should have included the amounts payable to the trust by the estate of Marie H. Maeder, who died July 31, 1966, in computing the amounts payable to John Maeder during his lifetime, pursuant to his right which he exercised in 1968, 1969 and 1970 to withdraw 5% of the aggregate value of the assets of the trust; and (3) whether or not petitioner should pay to the estate of John Maeder $50,000, an invasion of principal which petitioner alleges it had approved on March 31, 1970, prior to the death of John Maeder, but had not paid to him during his lifetime.
The administrator c.t.a. of the estate of John Maeder takes the affirmative position, and the guardian ad litem the negative position upon both the aforesaid questions.
If the contentions of the administrator c.t.a. should prevail, this would mean that both the additional assets subject to the 5% invasion and the $50,000 invasion will go over to the estate of John Maeder, and under his will to his sister, Marie M. Miles, outright. Under the position of the guardian ad litem, said assets remained in the John Maeder trust until the termination of the trust resulting from John Maeder’s death, and under the terms of the trust poured over to the Marie M. Miles trust under which the ward of the guardian ad litem and his brother are remaindermen.
First, the court will discuss and decide item (2).
Article second of the trust indenture provides in part: ‘ ‘ The Grantor’s son, John Maeder, shall have the right to withdraw from the trust, in each calendar year, a sum not in excess of (a) 5 fo of the aggregate value, as of the date upon which the corporate Trustee shall receive from him written notification of withdrawal, of the assets of the trust, or (b) $5,000, whichever is greater.”
Article seventh of the trust indenture provides: ‘ ‘ The Grantor may, at any time and from time to time, transfer and deliver to the Trustees, or, may by her Last Will and Testament give and devise to the Trustees, additional cash or other property acceptable to them which shall thereupon become a part of the trust estate and shall be held and disposed of by the Trustees in all respects subject to the provisions of this Indenture. The trust investments, whether originally or subsequently transferred to the Trustees, may be commingled and treated as part of a single trust.”
*167 During each of the years 1968, 1969 and 1970, petitioner paid John Maeder, upon his written notification of withdrawal, 5% of the aggregate value of the assets of the trust, including in said valuation $506,467.38 distributed to the trust under the will of Marie H. Maeder from her residuary estate but not including 5% of the balance distributable from her residuary estate to the trust under said will, which was admitted to probate in the Surrogate’s Court, Westchester County, on August 18, 1966. The court has read the written notifications of withdrawals by John Maeder dated April 23, 1968, January 20, 1969, and January 6, 1970, and is satisfied that each of said demands was for 5% of the aggregate value of the assets of the trust.
Under article fifth B of the will of Marie H. Maeder, the testatrix directed that the share, if any, set aside for the benefit of John Maeder in accordance with the provisions of article third of her will and the share, if any, of her residuary estate set aside upon her death for John Maeder in accordance with article fourth of her will, “ shall be transferred, conveyed and paid over and I give, devise and bequeath the same, to the Trustees, then acting, of the trust created for his benefit under a certain Indenture dated September 19, 1963, entered into between me, as Grantor, and John Maeder and The Chase Manhattan Bank (National Association), as Trustees, the same to be added to, held, managed and disposed of as a part of such trust.”
The account shows that on April 15, 1968, as of March 26, 1968, prior to the aforesaid written notifications, the trust received the afore-mentioned $506,467.38 from the estate of Marie H. Maeder. It further states: “ It is estimated that the interest of the trust accounted for herein in the Estate of Marie H. Maeder on the date of each such request (i.e., the requests for the 5% payments on April 26, 1968, January 23, 1969, and January 8, 1970) was approximately $200,000.”
The court decides that the petitioner shall include (even though the exact amount may not be determinable until the final accounting in the Marie H. Maeder estate) the said balance of the residuary estate of Marie H. Maeder payable to the trust under article fifth of her will.
The trustees were legatees under the will of Marie H. Maeder. A legacy vests upon the death of the testatrix unless a contrary intent is expressed by the will (64 N. Y. Jur., Wills, § 687).
*168 In this respect, a testamentary addition to an existing trust is governed by the same rule as prescribes when a trust is created. This rule is stated in Matter of Bird (241 N. Y. 184, 187-188): “When is a trust created? The answer depends upon the intentions of the testator as expressed in his will — not upon the action or non-action of executor or trustee — not upon their caprice or diligence. It may be upon the testator’s death. It is if there is nothing to indicate a contrary design. Where a sum is left in trust with the direction that the income be paid to A, then A is entitled to income from the death of the testator. (Cooke v. Meeker, 36 N. Y. 15; Matter of Benson, 95 N. Y. 503, 511; Matter of Stanfield, 135 N. Y. 392.) The trust certainly is created from the date when the cestui becomes entitled to its benefits.” (Accord, Matter of Vatable, 39 Misc 2d 169; Matter of Fowler, 6 Misc 2d 982; Matter of Hyatt, 81 N. Y. S. 2d 911.)
The companion rule is stated in Matter of Harlam (114 N. Y. S. 2d 435, 436) and in cases cited therein: “ Similarly, a power of invasion for the benefit of the income beneficiary of a testamentary trust is exercisable from the date of testator’s death, whether it is discretionary with the trustee, cf. Matter of Moss, 277 App. Div. 289, 98 N. Y. S. 2d 777, or mandatory. In re Emberson’s Estate, Sur., 34 N. Y. S. 2d 871; Estate of Rosenblatt, Sur., 104 N. Y. S. 2d 172. Hence, payment by the executor pursuant to an exercise of the power by the beneficiary was proper.” (Accord, Matter of Baylies, 104 N. Y. S. 2d 238.)
These rules have been embodied in our statutory law, EPTL 11-2.1 entitled “ Principal and income ” (subd. [c], par. [1]) which provides: “(1) An income beneficiary is entitled to income from the date specified in the trust instrument or, if none is specified, from the date an asset becomes subject to the trust. In the case of an asset which becomes subject to a trust by reason of a will, it becomes subject to the trust as of the date of the death of the testator even though there is an intervening period of administration of the testator’s estate.” (formerly Personal Property Law, § -27-e, subd. 1, derived from former § 17-b, subd. 1).
The intention of the testatrix, Marie H. Maeder, expressed in her will, does not evince “a contrary design” that the assets of her estate given, devised and bequeathed to the trust should become subject to the trust upon a date later than the testatrix’ death, except that which was devised and *169 bequeathed in trust for another according to article third of the will.
Article seventh of the trust indenture set forth above is consistent with the statutory rule aforesaid and does not evince “a contrary design”. That article supports the conclusion that the assets of Marie H. Maeder’s residuary estate given, devised and bequeathed to the trust became subject to the trust from the date of the testatrix’ death. Accordingly, such assets were available for the mandatory invasion of the principal of the trust upon receipt of notice of withdrawal from the income beneficiary as directed by article second of the trust indenture.
The court will now discuss and decide item (3). Is the estate of John Maeder entitled to $50,000 by reason of an invasion of principal of the trust for said amount which petitioner, the corporate trustee, had approved during the lifetime of the income beneficiary, John Maeder, but had not distributed to him at the time of his death?
Article second of the trust provides, in part: ‘ ‘ In addition to the payment of principal to which the Grantor’s son is entitled pursuant to the foregoing paragraph, the corporate Trustee is authorized and empowered to pay over or apply to or for his use and benefit from the principal of the trust, at any time and from time to time, such sum or sums, including the entire principal thereof, as the corporate Trustee, in its sole and uncontrolled discretion, shall determine. The Grantor requests the corporate Trustee to exercise this discretion liberally in favor of her son, notwithstanding that he may have substantial income or independent financial resources.”
On November 27, 1969, John Maeder requested of petitioner that he be permitted to make a $100,000 invasion of the principal of the trust. Petitioner alleges that it approved, on March 31, 1970, a $50,000 invasion by John Maeder, but it was agreed by Maeder and John K. Daly, vice-president of petitioner, in a telephone conversation on April 2, 1970, that petitioner could await a reasonable time for a more favorable stock market before selling any securities necessitated by the $50,000 invasion. Mr. Daly alleges that he dictated an office memorandum directed to an investment officer of petitioner upon the conclusion of his conversation with Mr. Maeder, which reads in part as follows:
“ JOHN H. MAEDER TRUST P 32372
*170 “ On 3/31/70 the PTOO approved an invasion of $50,000 for Mr. Maeder’s benefit to provide funds to complete the construction of his home at New Smyrna Beach, Florida.
“In a telephone conversation today with Mr. Maeder, he suggested we write him as to what we proposed to sell to raise this amount. He indicated that he had no objection if we wished to await a reasonable time for a more favorable market, although he recognizes that he is currently paying 8%% interest on a loan of $35,000 (with CMB) which he took out to cover his expenses on the house construction.”
There is no question of the propriety of the petitioner in approving the $50,000 invasion or of its authority under the trust indenture to do so. When a trust such as the trust involved herein is created authorizing the invasions of trust principal in the discretion of the trustee as to when they shall be made and how much they shall be, 1 ‘ The trustee’s decision regarding the propriety of invading trust principal will not be interfered with by the court except in a case of an abuse of discretion, bad faith, arbitrary action, or fraud.” (61 N. Y. Jur., Trusts, § 318).
The difficulty that must be resolved arises from the facts that John Maeder died on April 20, 1970 — 18 days after the telephone conversation alleged by Daly to have taken place between Maeder and himself — and as of that later date petitioner had not sold any securities of the trust and had not paid the $50,000 to Maeder. The intermediate account of petitioner states at Schedule D that “ John Maeder died before the necessary cash could be raised and distribution made to him ”.
An approval or authorization to invade was made on March 31, 1970, but the invasion was not to be made in the discretion of the trustee (as related on April 2,. 1970) until the market for the securities in the trust became more favorable. Unfortunately, John Maeder died on April 20, 1970, before the authorized invasion had been consummated. The time when the invasion was to take place was within the discretion of the trustee and the invasion never took place because Maeder died before the petitioner acted to carry out its expressed intent.
The court believes that a legal analogy as to when a gift is made applies here. A says to B, “ I am going to give you $100 ”. Unless the $100 is actually delivered by A to B, there is no valid gift (25 N. Y. Jur., Gifts, § 10). Further, there has not been a showing that John Maeder relied on the approved invasion to his detriment, thus creating an estoppel, since the apparent use of the moneys approved was to extinguish a prior loan of *171 $35,000 which he took out to cover the expense of his house construction. On the contrary, John Maeder agreed that petitioner, in its discretion, should wait a reasonable time for a more favorable stock market before selling any securities to obtain the cash for the invasion. Maeder in no way changed his position as a result of the petitioner-trustee advising him that it would permit the invasion when the market became more favorable.
Under the facts presented, the court finds that there was not an abuse of discretion, bad faith, arbitrary action or fraud on behalf of petitioner-trustee in delaying the distribution to John Maeder of the invasion requested by him and distributing the same to John Maeder for the reason that John Maeder agreed to the delay in the invasion. The court finds further that such invasion was not made by the trustee during John Maeder’s lifetime.
Accordingly, the court finds that the estate of John Maeder is not entitled to the payment of the said sum of $50,000.