MILES R. RIGGS, as Administrator, etc., Appellant, v. THE
AMERICAN TRACT SOCIETY, Respondent.

Plaintiff's complaint alleged in substance that R., his intestate, being at
the time of unsound mind, transferred to defendant various sums of
money under an agreement, in writing, by which defendant agreed to
pay to R. the interest on said money during his life, and after his death
interest on the whole or a part thereof to his executor or administrator for
the benefit of his widow, or directly to his widow and his sister for their
benefit during their lives ; that interest was paid by defendant up to the
death of R., but not since ; that the sister of R. died shortly after his
death ; that plaintiff, after his appointment as administrator, obtained
from the widow her written consent that he might surrender the written
agreement, which he offered to do, and demanded a return of the moneys,
which defendant refused.   On demurrer to the complaint, *held*, that it
stated a good cause of action ; that the allegation as to unsoundness of
mind was one of fact, and the contract was one that could be rescinded.
Where a party seeks to sustain  a contract made with a lunatic, on the
ground that it was made in good faith, for the benefit of the lunatic and
without knowledge of his incapacity, and that it has been so far per-
formed that said party cannot be placed in *statu quo*, these facts must
be alleged and proved.
*Riggs* v. *American Tract Society* (19 Hun, 481), reversed.

(Argued February 4, 1881 ; decided March 1, 1881.)

APPEAL from judgment of the General Term of the Supreme
Court, in the fourth judicial department, entered upon an order
made January 6, 1880, which reversed a judgment of Special
Term, entered upon an order overruling a demurrer to the
complaint herein.   (Reported below, 19 Hun, 481.)

The complaint alleged in substance that the plaintiff's in-
testate, Ira Riggs, was for upward of fifteen years next preced-
ing his death of unsound mind, and for that cause legally
incapable of making the dispositions of his property to the
defendant which are thereinafter set forth ; that shortly prior
to his death he, in form, transferred to the defendant several
sums of money, amounting in all to the sum of $4,000, which
the defendant received ; that said moneys were so transferred
and received under an arrangement by which the intestate,

being of unsound mind as aforesaid, agreed to give, and did give, said moneys to defendant, and defendant agreed to give, and did give, to the intestate certain assurances in writing, obligating the defendant to pay the interest on said money, every six or every three months, to the intestate during his life, and thereafter — on the whole or a part of said money — to either the executor or administrator of the intestate, for the benefit of his wife, being his widow, or directly to his wife and to his sister, Marilda, for their benefit during their lives respectively. The complaint also alleged that the interest on said money was paid by the defendant to the intestate during his life.; that his sister, Marilda, died shortly after his death, without having received any of such interest, and that none of said interest has been paid to the plaintiff; that soon after the plaintiff was appointed administrator he found said written assurances among the papers of the intestate, and thereupon he obtained from the widow of the intestate her written consent that he might surrender said assurances to the defendant, and he afterward, and before the commencement of this action, offered to surrender to the defendant the said consent of the widow, acknowledged by her, together with the said assurances and all claims of the plaintiff or of the widow based upon them, and demanded a return of said sums of money ; all of which the defendant refused. The relief demanded is a judgment for said $4,000, with interest from the time of said demand.

The demurrer was upon the grounds : 1. That there is a defect of parties defendant, in the omission of the widow of the intestate, and also in the omission of the personal representatives of the next of kin of his said sister, deceased ; and 2. That the complaint does not state facts sufficient to constitute a cause of action.

*H. L. Comstock* for appellant. The words "unsound mind" as used in the complaint are of equivalent import with the phrase *non compos mentis*. (*Ex parte Bransley*, 3 Atk. 167; *Stewart's Executor* v. *Lispinard*, 26 Wend. 297; *Blanchard* v. *Nestle*, 3 Den. 41; 1 R. S. 719, § 10; 2 id. 54, 56,

57, § 1; 2 Abb. Forms, 41; *Dows* v. *Hotchkiss,* 10 Leg. Obs. 281; *Seaver* v. *Phelps,* 11 Pick. 304.) The gifts, or transfers of money, made by the plaintiff's intestate to the defendant, as stated in the complaint, were void, and not merely voidable. (*Van Deusen* v. *Sweet,* 51 N. Y. 378; *Farley* v. *Parker,* 6 Or. 105; 25 Am. Rep. 514; *Dexter* v. *Hall,* 15 Wall. 9; *Thompson* v. *Leach,* Carth. 435; *Estate of Sarah De Silver,* 5 Rawle, 111; *Yates* v. *Boen,* 2 Str. 1104; *Beverly's Case,* 4 Rep. 123; *Thompson* v. *Leach,* Comb. 468; *S. C.,* 3 Salk. 300.) If it should be assumed that the several transfers of money by the intestate to the defendant, as stated in the complaint, were voidable, and not void, still plaintiff, as administrator, has a right to avoid the several transfers and recover back the money for the benefit of the next of kin and creditors of the intestate. (*Gibson* v. *Soper,* 6 Gray, 279; *Nichol* v. *Thomas,* 53 Ind. 42; *Hovey* v. *Hobson,* 53 Me. 451; *Seaver* v. *Phelps,* 11 Pick. 304; *Rice* v. *Peet,* 15 Johns. 503; *Henry* v. *Fine,* 23 Ark. 417; *Van Dusen* v. *Sweet,* 51 N. Y. 384; *Matthiesen and W. R. Co.* v. *McMahon,* 38 N. J. L. 537.) The transactions between the intestate and the defendant were substantially gifts, and the agreement of the defendant to pay interest on the money during the life-time of the intestate, his widow and sister, does not change the character of the transactions as gifts. (*Doty* v. *Wilson,* 47 N. Y. 580; *Hills* v. *Hills,* 8 M. & W. 404; *Blount* v. *Barrow,* 4 Bros. C. C. 72; *Moulton* v. *Camroux,* 2 Exch. 487.) It was not necessary that the plaintiff should put the defendant *in statu quo* in fact, but only that he should be able to do so and should make the offer to do it. (*Gibson* v. *Soper,* 6 Gray, 279; *Henry* v. *Tine,* 23 Ark. 417; *Nichol* v. *Thomas,* 53 Ind. 42.)

*Howard Payson Wilds* for respondent. The administrator cannot maintain this action, even if the intestate's transfer of money to defendant were void. (2 R. S. 82, § 6; *Jackson* v. *King,* 4 Cow. 207, 217; Ordronaux, Judicial Aspect of Insanity; *Person* v. *Warren,* 14 Barb. 494; *Osterhout* v. *Shoemaker,* 3 Den. 37, note.) This action is one for money had

and received, and the plaintiff fails to satisfy the well-settled
rule that he must show an equitable right in good conscience
and natural justice. (*Doty* v. *Willson*, 47 N. Y. 584; *Hills*
v. *Hills*, 8 M. & W. 404; *Bloubet* v. *Burrow*, 4 Brown Ch. C.
72; *Allen* v. *Berryhill*, 27 Iowa, 534; *S. C.*, 1 Am. R. 309;
*Allis* v. *Billings*, 6 Metc. 415; *Carrier* v. *Sears*, 4 Allen, 336;
*Howe* v. *Howe*, 99 Mass. 98; *Blanchard's Gunstock Factory*
v. *Warner*, 1 Blatchf. 258, 271, 277; *Dorsey Harvester Rake
Co.* v. *Marsh*, 6 Fish. Pat. Cas. 393; *Ould* v. *Washington
Hospital*, 95 U. S. 303; 2 Perry on Trusts, §§ 701, 705; *Buel*
v. *Boughton*, 2 Den. 91; 1 Chit. Pl. 368; *Peters* v. *Gooch*, 4
Blackf. [Ind.] 515; *Stanton* v. *Miller*, 1 Sup. Ct. [T. & C.] 23;
58 N. Y. 192; *Matter of Cornwall*, 9 Blatchf. 114; *Spalding*
v. *Hallenbeck*, 30 Barb. 292; 35 N. Y. 204; 39 Barb. 79.)
A person who is merely " of unsound mind " is not necessarily,
or even presumptively, incapable of making such a disposition
of his property. (Browne's Med. Juris. of Insanity, § 57;
*Searle* v. *Galbraith*, 73 Ill. 272; *Kendall* v. *May*, 10 Allen
[Mass.], 59, 64; *Hall* v. *Unger*, 2 Abb. [U. S. Circ. Ct.] 512;
*Dennett* v. *Dennett*, 44 N. H. 531.)   The character of the
unsoundness of mind and the connection between the alleged
unsoundness and the kind of transaction are essential matters
necessary to be pleaded as matter of fact. (*Oakes Case*, 8 Law
R. 122; *Henchman* v. *Riche*, Brightly, 143; Article on Con-
finement of Insane, 3 Am. Law Rev. 193, Jan. 1869; *Brushe's
Case*, 3 Abb. [N. C.] 325; *Ayert' Case*, id. 218; *Spittle* v.
*Walton*, L. R., 11 Eq. 420; *Kendall* v. *May*, 10 Allen [Mass.],
59; *Cartwright* v. *Cartwright*, 1 Phill. 90; *Matter of Barker*,
2 Johns. Ch. 237; *Breed* v. *Pratt*, 18 Pick. 115; *Lewis* v.
*Jones*, 50 Barb. 645; *Matter of Gilbert*, 3 Abb. [N. C.] 222;
*Delafield* v. *Parish*, 25 N. Y. 9, 27, 29; *Stewart* v. *Lispenard,*
26 Wend. 225; *Van Guysling* v. *Van Kuren*, 35 N. Y. 70;
*Banks* v. *Goodfellow*, L. R., 5 Q. B. 549; *Jackson* v. *King*, 4 Cow.
207; *Person* v. *Warren*, 14 Barb. 495; Bishop on Mar. and Div.,
§ 129; Browne's Med. Juris. of Insan., § 155, last paragraph;
*Anon. Z.* v. *X.*, 2 Key & J. 441; Story on Partn., §§ 292–297;
*People* v. *Montgomery*, 13 Abb. Pr. [N. S.] 207; *People* v.

*Flanigan*, 52 N. Y. 467; *People ex rel. Norton* v. *N. Y. Hospital*, 3 Abb. [N. C.] 229, note; *Holcomb* v. *Holcomb*, 28 Conn. 177; *Regina* v. *Hill*, 5 Eng. L. & Eq. 547; *S. C.*, 5 Cox Cr. Cas. 2592; Den. Cr. Cas. 254.) A mere allegation in a complaint that a party was " of unsound mind," is wholly insufficient to show any one particular incapacity. (*Matter of Barker*, 2 Johns. Ch. 237; 3 Barb. Ch. Pr. 659; 3 Tiffany & S. 420; Nix, Forms, 192; *People ex rel. Purdy* v. *Highway Comm.*, 54 N. Y. 276; *City of Buffalo* v. *Holloway*, 7 id. 493; *Butler* v. *Viele*, 44 Barb 166; *Simmons* v. *Fairchild*, 42 id. 404; *The Commercial Bk. of Rochester* v. *The City of Rochester*, 41 Barb. 341, 342; *Hofheimer* v. *Champbell*, 59 N. Y. 274; *Deshon* v. *Merchants' Bank*, 18 Bosw. 461.) The contracts of an insane person in the absence of fraud, etc., are not void, but at most only voidable. (*Ingraham* v. *Baldwin*, 9 N. Y. 45; 12 Barb. 9; *Loomis* v. *Spencer*, 2 Paige, 158; *Matter of Exp. Beckwith*, 3 Hun, 443; *Fitzhugh* v. *Wilcox*, 12 Barb. 237; *Person* v. *Warren*, 14 id. 488; *Canfield* v. *Fairbanks*, 63 id. 461; *Beavan* v. *McDonnell*, 9 Exch. 309; *Beals* v. *See*, 10 Barr. 60; *Allis* v. *Billings*, 6 Metc. 415; *Carrier* v. *Sears*, 4 Allen, 336; *How* v. *How*, 99 Mass. 98; *Allen* v. *Berryhill*, 27 Iowa, 534; *S. C.*, 1 Am. Rep. 309; *Hunt* v. *Weir*, 4 Dana, 348; *Eaton* v. *Eaton*, 8 Vroom [N. J.], 108; *S. C.*, 18 Am. Rep.; *Caar* v. *Holiday*, 5 Ired. Eq. 167; 1 Story on Contr., § 82 [5th ed.]; § 42 [4th ed.]; 1 Addison on Contr. 140 [Bank's ed.]; § 192, p. 192 [Morgan's ed.].) Equity will not interfere to avoid an executed contract, where it was made in good faith, without knowledge of the incapacity, and the lunatic has had the benefit of it. (*Loomis* v. *Spencer*, 2 Paige, 158; *Price* v. *Barrington*, 7 Eng. L. & Eq. 254; *S. C.*, 15 Jur. 999; 3 Mac. & G. 486; *Sprague* v. *Duel*, Clarke Ch. 90; 11 Paige, 480; *Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541; *Canfield* v. *Fairbanks*, 63 Barb. 461; *Neil* v. *Morley*, 9 Ves. 478; *Loomis* v. *Spencer*, 2 Paige, 153; *Person* v. *Warren*, 14 Barb. 488.) Contracts with an insane person, wholly executed, or so far executed that the parties cannot be placed in *statu quo*, cannot be avoided either at law or in

equity upon the mere ground of insanity. Fraud or uncon-
scionable advantage, or, at least, knowledge of the insanity,
must be alleged and shown. (1 Story's Eq. Jur., § 227; *Cruise*
v. *Christopher*, 5 Dana, 182, note; *Moulton* v. *Camroux*, 2
Exch. 487; 4 Exch. 17; *S. C.*, 18 Law J. Exch. 356, 1848;
*Elliot* v. *Ince*, 7 DeG. M. & G. 475–487; *State Bk.* v.
*McCoy*, 19 Smith, [Penn.] 204; *Nace* v. *Boyer*, 6 Casey, 99; 2
Kent's Com. [12th ed.] 451; *Matter of Beckwith*, 3 Hun, 445;
*Lincoln* v. *Buckmaster*, 32 Vt. 652; *Matter of Rich'd Beck-
with*, 2 Hun, 443; *Person* v. *Warren*, 14 Barb. 488; *Oster-
hout* v. *Shoemaker*, 3 Den. 37, note; *Loomis* v. *Spencer*, 2
Paige, 153; *Musselman* v. *Cravens*, 47 Ind. 1; *Young* v.
*Stevens*, 48 N. H. 133; Wharton & Stille, Med. Juris., § 8 [ed.
1873]; *Behrens* v. *McKenzie*, 23 Iowa, 343; *Beals* v. *Lee*, 10
Barr. 56; *Lancaster Co. National Bk.* v. *Moore*, 78 Penn. St.
412; *Matter of Gilbert*, 3 Abb. [N. C.] 222; *May* v. *May*,
109 Mass. 254.) It is incumbent on the party who seeks to
avoid a transaction by an insane person to allege and prove
that the other party had knowledge of the insanity. (*Young*
v. *Stevens*, 48 N. H. 133; *Harrison* v. *Richardson*, 1 Moody
& Rob. 504; *Ingraham* v. *Baldwin*, 9 N. Y. 45; *Behrens* v.
*McKenzie*, 23 Iowa, 343; 2 Chitty's Pl. 436 [ed. of 1876];
Bullen & Leak's Forms, 354; 2 Abb. Forms, 41; *Arnold's
Case*, 16 How. St. Tr. 764.)

DANFORTH, J. In this case we can look to the complaint
only for the facts on which the questions presented by the de-
murrer turn; and although both grounds stated by the defend-
ant have been fully argued, we see no reason to differ from the
conclusion reached by the General Term, that the complaint
contains a cause of action.

In substance it is that Ira Riggs in his life-time was of
unsound mind, and while in that condition transferred to the
defendant by gift or contract several sums of money which it
still holds, and refuses to return. Now upon that concession
the learned counsel for the defendant has failed to raise a doubt
that Ira Riggs if living would have a right to reclaim the money

or, he being dead, that his representative may do so. Indeed the contrary can be maintained only by overthrowing the elementary principle of the common law, which renders a gift or contract invalid unless the mind goes with the act, and this, whether the actor is without mind, or of unsound mind, or of a mind not possessed of itself, as under duress. Of course if the plaintiff stood only on the fact of transfer, sanity at the time alleged would be presumed, and the plaintiff have the burden of showing the contrary. Now it is otherwise. The conceded fact takes the place of proof, and renders it unnecessary. It is, however, seriously argued that some further allegation is necessary, "that a person who is merely of unsound mind is not necessarily or even presumptively incapable of making such a disposition of his property." But in no other words could the pleader so well state the exact point to which the jury or the trial court must come before a decision is rendered in favor of the plaintiff. In *Ex parte Barnsley* (3 Atk. 168), to an inquisition "whether B. is a lunatic," the return was that "from weakness of mind he is incapable of governing himself, and his lands and tenements;" and upon motion to quash there was much debate as to its effect, whether sufficient or not. It was held bad, partly because the words in sense and meaning were not equivalent to the answer sought by the inquisition, and partly because the return was not easily traversable. The chancellor, saying after reference to investigation of the records that the proper return was " *lunaticus* or *non compos mentis*," or "*insana mentis;* " or since the proceedings have been in English, " of unsound mind," which he says " amounts to the same thing." Thus the fact to be found might be expressed in either of these ways. They all import a total deprivation of sense, and he adds, " courts of law understand what is meant by *non compos* or *insane*, as they are words of a determinate signification," and, as before stated, either expression is represented in English by the words used in this complaint. The allegation is, that Ira Riggs was of " unsound mind," not as a conclusion of law, but a fact founded upon other facts, some or all of which it may be necessary to prove, but only when issue is taken upon the one

alleged.   In the same sense the words are used in our statutes, as where in proceedings to acquire land in certain cases, papers are to be served upon one who is " an idiot or of unsound mind." and this, whether before or after inquisition found or guardian appointed (Laws of 1850, § 14, subd. 4, 6) ;  or the chancellor is given the care and custody "of persons of unsound mind ; " (2 R. S., tit. 2, chap. 5, p. 2, § 1.)   So " persons of unsound mind" are incapable of holding or conveying land (1 R. S., 719, § 10), or submitting controversies to arbitrators, or devising real estate (2 .R. S., 56, 57, § 1), or bequeathing personal estate (2 R. S., 60, § 21); and in the same way in other statutes.   Therefore, both at common law, in the practice of the courts, and the language of the legislature, these words signify and describe persons of a certain condition which, whenever called in question, is to be ascertained like any other fact named or stated in pleading, the same as that a person is " an infant " or " a married woman."   It is said, however, and I think justly, by the learned counsel for the defendant, that when made in good faith, for the benefit of the lunatic, without notice of incapacity, and so far performed that if rescinded the party executing cannot be placed *in statu quo*, the contract shall stand.   *Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y., 541, cited by him, and many other cases, some of which are therein named, are to that effect.

But no one of these facts is to be found within the corners of the record on which this appeal stands.   So far from it, the transaction was to the prejudice of Ira Riggs.   In the ordinary affairs of life, the borrower pays interest and at the end of the term repays the principal.   It is part of the debt.   Here the defendant was to pay the interest for a period of time and thereafter retain both principal and interest as its own ; in no event repay the principal.   Riggs was to receive nothing which was not already his, nor was the defendant to part with any thing which belonged to it.   A sane man might so contract if he saw fit; for he could dispose of his property where, when and how he pleased ; but the defendant claims under one incapable of contracting.   Therefore, if the facts above alluded to

as those upon which a title acquired from such a source can stand, they must be established. They cannot be presumed to lie in the knowledge of the plaintiff, or even to exist; if they do, they must be alleged and proved by the defendant.

As to the other ground of demurrer, we think, as the case now appears, the controversy may be determined without the presence of other parties. The money in question was taken from the estate of the intestate, and if restored will again form part of it for distribution. If invalid at all, the transaction with the defendant was wholly so, and neither the widow nor the sister of the intestate could acquire rights under it; but if this was all, it might still be necessary to bring them before the court in order that upon such question they could be heard. But the question now is with the defendant; and by its concession the plaintiff is both able and willing to cancel and return to it the assurance or promise which it gave to the intestate on receiving his money, and also to surrender to it all claims which the beneficiaries or either of them might have under such promise or assurance. This is enough to release the defendant from all liability, and will operate as a complete discharge. There are many questions discussed by the learned counsel for the defendant which may be of great interest in some other stage of the case. They need not be considered now, for however answered they would not affect the conclusion which necessarily follows from the views above expressed.

The judgment appealed from should be reversed and judgment of Special Term affirmed, with leave, however, to the defendant, within twenty days hereafter, to withdraw its demurrer and answer over upon payment of costs in the Supreme Court and in the Court of Appeals.

All concur, except Rapallo, J., absent.

Judgment accordingly.