LUDLOW W. VALENTINE, an Infant by GEORGE W. BERGEN, His Guardian Ad Litem, Respondent, *v.* ELIZABETH H. LUNT, Appellant, Impleaded with HERMANN T. RICHARDT and SUSAN A. AUSTIN.

*Demurrer to one of several defenses — invalidity of a deed from a person of unsound mind — rights of purchasers from the grantee named in such deed.*

A complaint alleged that one Catharine A. Valentine was seized of certain land; that she employed the defendant Richardt as her physician; that he entered into illicit relations with her and obtained complete control and mastery over her mind and property; that, on or about June 7, 1886, Mrs. Valentine, being of unsound mind and incompetent to manage herself or her affairs in consequence of the influence exercised over her by Richardt, he took advantage thereof and obtained from her a conveyance to himself of certain premises without paying any consideration therefor, although the conveyance recited a consideration of $15,000, which the premises were then and are now fairly worth.

It further alleged that by a deed, dated October 27, 18:6, Richardt conveyed the premises to the defendant Austin for the sum of $12,000, who paid $2,000 in cash and gave him a mortgage on the premises for $10,000, which mortgage was paid off and discharged; that the defendant Austin, by an instrument dated October 1, 1887, mortgaged the premises to the defendant Elizabeth H. Lunt, to secure the payment of $9,000 advanced by her to the defendant Austin, and demanded that the conveyances of June seventh and October twenty-seventh, and the mortgage of October first, should be declared void, and that these instruments be delivered up and canceled.

The defendant Lunt interposed an answer containing two defenses, the second of which set up a claim of the defendant Austin that she was the owner of the premises when she executed the mortgage, and her possession under the deed

from Richardt, and that the mortgage was taken by the defendant Lunt, relying upon the apparent ownership of the defendant Austin, and that by reason thereof she loaned to Austin the sum of $9,000 and took a mortgage upon the premises as security for the payment thereof.

Upon the hearing of a demurrer interposed to this second defense:

*Held,* that, as this defense made no denial of any of the allegations of the complaint, the complaint stood admitted, for all the purposes of the demurrer, precisely as if this was the sole and only defense set up by the answer.

That as the defendant did not purchase of Mrs. Valentine, who received no consideration from her immediate grantee, the defendant must claim through Richardt, who could convey no better title than he himself had.

That a consenting mind was an essential requisite to the validity of every deed; and if one of the parties to an instrument be destitute of understanding or deprived of volition the deed is void no matter what appearance or complexion and ceremony of execution the instrument may have stamped upon it.

That the legislature of this State has reinforced the common law in that respect and interposed a statutory interdiction against the alienation of lands by persons of unsound mind. (1 R. S., 719, § 10.)

That as the defense, challenged by the demurrer, admitted the unsoundness of mind of Mrs. Valentine, it thereby conceded that the person who executed the deed was destitute of legal capacity and that the deed was invalid.

APPEAL by the defendant Elizabeth H. Lunt from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of Kings county on October 19, 1888, and from an order made at a Special Term held in the city of Brooklyn on October 5, 1888, sustaining the plaintiff's demurrer to the defendant's second defense.

*William C. Beecher,* for the appellant.

*Horace Secor, Jr.,* for the respondent.

DYKMAN, J.:

The plaintiff in this action is an infant and the only child and heir-at-law of Catharine A. Valentine, deceased, who died intestate on the 9th day of January, 1888.

The plaintiff alleges the seizin in fee of Catharine A. Valentine of the premises described in the complaint, and sets up the employment of the defendant Richardt as her physician, and then charges upon him illicit relations with her socially after the commencement of his professional visits, and the obtainment of complete control and mastery over her mind and property. It then alleges that, on

or about June 7, 1886, Mrs. Valentine being of unsound mind and incompetent to manage herself or her affairs, in consequence of the influence exerted over her by Richardt, he took advantage thereof and obtained from her a conveyance to him of the premises in question, without paying any consideration therefor, although the conveyance recites a consideration of $15,000, which the premises were and are fairly worth.

It further alleges that, by deed bearing date October 27, 1886, Richardt conveyed the premises to the defendant Austin for the sum of $12,000. That she paid $2,000 in cash and gave him a mortgage on the premises for $10,000, which mortgage was paid off and discharged, and that the defendant Austin, by an instrument dated October 1, 1887, mortgaged the premises to the defendant Elizabeth H. Lunt, to secure the payment of $9,000 advanced by her to the defendant Austin; also, that Mrs. Valentine continued to reside on the premises until after the sale thereof to the defendant Austin, when she moved to the city of New York, Richardt, also, at the same time moving from Brooklyn to a place near her in the city of New York.

The plaintiff then demands judgment which shall declare void the conveyance of June 7, 1886, to the defendant Richardt, together with the conveyance of October 27, 1886, to the defendant Austin, and the mortgage of October 1, 1887, to the defendant Lunt, and that all these instruments be delivered up and canceled, and for such further judgment or relief as may be just.

The defendant Lunt, in her answer, first makes some admissions and some denials of knowledge sufficient to form a belief, and makes a general denial of every allegation not specifically admitted. Then, for a further and separate defense to the complaint, she sets up the claim of the defendant Austin to be the owner of the premises on the 3d day of October, 1887, when her mortgage was given and her possession under the deed from Richardt, and alleges her reliance upon the apparent ownership of the defendant Austin, and that by reason thereof she loaned to her the sum of $9,000, and took a bond and mortgage upon the premises as security for the payment thereof. She then alleges that she had no notice or knowledge of the mental condition of Mrs. Valentine, or the undue influence exerted over her by the defendant Richardt, and that she

acted throughout in good faith. We assume that the answer of the defendant Austin was similar, but no copy of that pleading is printed in the appeal book.

The plaintiff demurred to the second separate defense in those answers, on the ground that it was insufficient in law, upon the face of the answer. The demurrer was sustained, and an interlocutory judgment was entered thereon, from which the defendant Lunt has appealed. As the defense to which the demurrer was interposed makes no denial of any of the allegations of the plaintiff, the complaint stands admitted, for all purposes of the demurrer, precisely as if it was the sole and only defense set up by the answer; and the defendants Austin and Lunt rely solely upon their position of *bona fide* purchasers and mortgagees, respectively, which they are assumed to be for the purposes of our decision. But they did not purchase of Mrs. Valentine, and she received no consideration from her immediate grantee. They claim through Richardt, and he could convey no better title than he himself had.

Under the demurrer of the defendants, we assume the perpetration of a great wrong upon Mrs. Valentine by the defendant Richardt. With full knowledge of her want of mental capacity and her incompetence to manage herself or her affairs, as a result of his nefarious influence over her, he obtained from her a deed of her property without paying any consideration therefor. Such a transaction is destitute of all the elements which impart valid or binding force to contracts or conveyances. The contribution of a consenting mind is an essential requisite to the validity of every deed; and if one of the parties to an instrument be destitute of understanding or deprived of volition, no matter what appearance or complexion and ceremony of execution the instrument may have stamped upon it, it is void and of no effect. It is a nullity from the beginning, because it has no mutuality of consent. It is not the result of the meeting of two minds. The law is well settled on that subject, and judges and elementary writers have employed plain and forcible language in setting it down.

Story, in his work on Equity Jurisprudence (§ 222), says: "The general theory of the law in regard to acts done and contracts made by parties, affecting their rights and interests, is that in all such cases there must be a free and full consent to bind the parties. Con-

sent is an act of reason and accompanied with deliberation; the mind weighing, as in a balance, the good and evil on each side. And, therefore, it has been well remarked * * * that every true consent supposes three things: first, a physical power; secondly, a moral power; and, thirdly, a serious and free use of them. * * * And hence it is, that if consent is obtained by * * * undue influence, it is to be treated as a delusion, and not as a deliberate and free act of the mind."

In the case of *Riggs* v. *The American Tract Society* (84 N. Y., 336), Judge DANFORTH, in the course of his opinion, says, substantially, that a gift or contract is invalid unless the mind goes with the act, and where the actor is without mind or of unsound mind, or of a mind not possessed of itself as under duress.

In the case of *Van Deusen* v. *Sweet* (51 N. Y., 382), the trial court charged the jury, among other things, that if they found the grantor's mind did not assent either to the execution or delivery of the deed, then they might find that the deed was a nullity, adding that it was necessary that the mind of the grantor should assent to the act, not only that his hand should sign, and he in some manner should deliver the deed, but that his mind should assent to it, and the charge was held to be correct and not erroneous.

In the case of *Barry* v. *The Equitable Life Assurance Society* (59 N. Y., 592), Judge FOLGER, delivering the opinion, said: "Where there exist coercion, threats, compulsion and undue influence there is no volition; there is no intention nor purpose, but to yield to moral pressure for relief from it; a case is presented more analogous to a parting with property by robbery. No title is made through a possession thus acquired."

The foregoing extracts have been brought together to manifest the uniformity and harmony of judicial expression and decision upon the subject under disscusion. We see thus how the principle involved in this action has been expounded by eminent jurists, and how all acts and deeds which are not the result of free agency are void, *ab initio;* they cannot be else. We may also take a closer view. The defense challenged by the demurrer admits the unsoundness of mind of Mrs. Valentine, and such admission imports a total deprivation of senses. Such is the legal signification of the term "unsound mind." (*Riggs* v. *Tract Society*, 84 N. Y., 336; S. C., 95 id., 511.)

The answer, therefore, concedes that the person who executed the same was destitute of legal capacity, and the invalidity of her deed results from such incapacity.

Our legislature has reinforced the common law in that respect, and interposed a statutory interdiction against the alienation of lands by persons of unsound mind. (1 R. S., 719, § 10.) Her deed was, therefore, in contravention of the statute and a nullity. The defendants seek to bring this case within a line of decisions holding the deeds and contracts of persons of unsound mind voidable only, and not absolutely void; and such a doctrine has been inculcated in many cases in our courts; like the *Mutual Life* v. *Hunt*, (79 N. Y., 541.) But in all such cases an element of good faith has predominated, and the contracts have been beneficial to the lunatic or his estate, and entered into without notice of incapacity, and so far performed that the executing party cannot be placed in *statu quo*, if the transaction be rescinded. All these essential requisites are absent and wanting in this case. and it cannot be brought under the principles invoked.

There may be cases also where a *bona fide* purchaser for value acquires a valid title to property which he bought from a person who procured it by fraud or false representations; but in all such cases a sale was made, induced by falsehood and fraud, it is true, but still made with intent to pass the title. In all such cases the seller voluntarily parted with the possession, and there was an uncontrolled volition to pass the title; such is not this case.

In no view do we see any escape for these two defendants who are without fault of their own, and the judgment should be affirmed, with costs.

PRATT, J., concurred.

Judgment sustaining demurrer to second defense affirmed, with costs.