LUDLOW W. VALENTINE, an Infant, etc., Respondent, *v.* ELIZABETH H. LUNT, Impleaded, etc., Appellant.

A grantee or mortgagee, for a valuable consideration and without notice, from one who obtained title by fraud and undue influence, acquires a good title or lien and will be protected against the claims of the defrauded vendor.

The complaint herein alleged, in substance, that V., "being of unsound mind and incompetent to manage herself or her affairs in consequence of the influence exerted over her by" defendant R., "he fraudulently taking advantage thereof, obtained from her a deed" of certain premises described, "reciting a consideration of $15,000," whereas, in fact, he paid no consideration; that R. conveyed the premises to defendant A. for the sum of $12,000, which she paid; that both deeds were recorded; that

A. mortgaged the premises to defendant L. to secure $9,000 advanced by her to A. The relief asked was that said deeds and mortgage be declared void, and that they be delivered up to be canceled. L., among others, set up as a defense that her mortgage was for money loaned, in reliance upon the ownership of A., who was then in possession; that it was taken in good faith without knowledge or notice of the mental condition of V., or the fraud or undue influence claimed by plaintiff. On demurrer to this defense, *held*, that the complaint did not charge that V. was insane; that the words "being of unsound mind" were qualified by the other averments, and the actual charge was that she was coerced and imposed upon by R.; that, therefore, the question was not presented as to how the parties would be affected if the averment had been that V. was, at the time of the execution of the deed, a person of unsound mind; and that the answer was good.

*Miller* v. *Zeimer* (111 N. Y. 441); *Riggs* v. *American Tract Society* (84 id. 330; 95 id. 503); *Fisher* v. *Bishop* (108 id. 25); *Van Deusen* v. *Sweet* (51 id. 378); *Barry* v. *Equitable Life Assurance Society* (59 id. 587); *Loomis* v. *Ruck* (56 id. 462) distinguished.

(Argued June 4, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 11, 1889, which affirmed an interlocutory judgment, entered upon an order sustaining plaintiff's demurrer to the answer of the defendant Elizabeth H. Lunt.

This action was brought by plaintiff, as the heir-at-law of Catherine A. Valentine, deceased, to set aside a deed of certain premises in the city of Brooklyn from her to the defendant Herman T. Richardt, a deed of said premises from Richardt to the defendant Susan A. Austin, and a mortgage thereon from said defendant to the defendant Elizabeth H. Lunt.

This is an appeal from an order of the General Term of the Supreme Court and from a judgment affirming an interlocutory judgment in favor of the plaintiff upon his demurrer to the answer of the defendant Lunt. The case comes to this court on the certificate of the General Term that, in its opinion, the questions are of sufficient importance to render a decision by the Court of Appeals desirable before other proceedings are had in the action.

The material facts are stated in the opinion.

*William C. Beecher* for appellant. If Mrs. Valentine had been insane and there had been no fraud — then parties dealing with her or their grantees, who acted without notice and in good faith, will be protected. (*M. L. Ins. Co.* v. *Hunt,* 79 N. Y. 541.) If, on the other hand, Mrs. Valentine were sane, but the property had been obtained from her by fraud, then subsequent transferees, who took without notice and in good faith, will also be protected. (*Simpson* v. *Del Hoyo,* 94 N. Y. 189.) In order to take advantage of such facts as a defense they must be alleged and proved. (*Riggs* v. *A. T. Soc.,* 84 N. Y. 330, 337, 338.) The deed of one *non compos mentis,* if given before inquisition found, like that of an infant, is not void, but only voidable. (*Ingraham* v. *Baldwin,* 9 N. Y. 45; *Bool* v. *Mix,* 17 Wend. 119, 134; *Riggan* v. *Green,* 80 N. C. 236; *Freed* v. *Brown,* 55 Ind. 310, 316; *Carrier* v. *Sears,* 88 Mass. 336; *Allis* v. *Billings,* 47 id. 415; Wait on Fraud. Con. § 466; *M. L. Ins. Co.* v. *Hunt,* 79 N. Y. 541; *Simpson* v. *Del Hoyo,* 94 id. 189; *Seymour* v. *McKinstry,* 106 id. 230, 237, 241; *Bumpus* v. *Platner,* 1 Johns. Ch. 213; *Jackson* v. *Henry,* 10 Johns. 185, 195, 197; *Podden* v. *Taylor,* 44 N. Y. 371.) The court will not set aside the deed or annul the act of a lunatic except on equitable terms. (*Canfield* v. *Fairbanks,* 63 Barb. 461; *Parson* v. *Warren,* 14 id. 488.)

*Horace Secor, Jr.,* for respondent. As the second defense does not deny the allegations of the complaint, either expressly or by reference to and adoption of the first defense, the complaint stands admitted for the purpose of this demurrer, the defendant Lunt relying solely upon her being a *bona fide* incumbrancer, etc., without notice, which also stands admitted. (*Hammond* v. *Earle,* 58 How. Pr. 426.) The allegation that Mrs. Valentine was of "unsound mind" is fatal to the validity of the deed to Dr. Richardt, being equivalent to an allegation that she was insane. (*Riggs* v. *A. T. Soc.,* 84 N. Y. 330; 95 id. 503, 512.) The complaint is also based upon fraud and undue influence, Dr. Richardt having " complete control and

mastery over her mind and property." (1 Story on Eq Juris. § 222; *Fisher* v. *Bishop*, 108 N. Y. 25; *Riggs* v. *A. T. Soc.*, 84 N. Y. 330, 336; *Van Dusen* v. *Sweet*, 51 id. 382; *Barry* v. *E. L. A. Soc.*, 59 id. 592.) The deed to Dr. Richardt being void could not convey a good title to a *bona fide* purchaser for value without notice. (*Bartlett* v. *Musliner*, 28 Hun, 235; *Berry* v. *Anderson*, 22 Ind. 36; *Smith* v. *S. R. Bk.*, 32 Vt. 341; *Ford* v. *James*, 4 Keyes, 300; *De Wolf* v. *Haydn*, 24 Ill. 525.) The allegation that Mrs. Valentine was of unsound mind, being equivalent to an allegation or finding that she was a lunatic, a *bona fide* purchaser from her grantee could stand in no better position than such grantee. (*Marvin* v. *Lewis*, 61 Barb. 49; 2 R. S. [6th ed.] 1094, § 17; *M. L. Ins. Co.* v. *Hunt*, 79 N. Y. 541; *Riggs* v. *A. T. Soc.*, 84 id. 337.) But Mrs. Valentine's condition down to the time of her death prevented any question of estoppel from arising as to her, and no estoppel can be imputed to this infant plaintiff. (*Marvin* v. *Lewis*, 61 Barb. 49.) As the defendants have an apparently valid title, this action to compel the surrender and cancellation of the deed from Mrs. Valentine and of the deed and mortgage resting thereon, as a cloud upon plaintiff's title, is proper. (*Bockes* v. *Lansing*, 74 N. Y. 437; *R. P. Co.* v. *O'Dougherty*, 81 id. 474, 482; *Moores* v. *Townshend*, 102 id. 387.) The complaint properly alleges both unsoundness of mind and undue influence. (*Leighton* v. *Orr*, 44 Ia. 679; *Sears* v. *Shafer*, 6 N. Y. 268.)

DANFORTH, J. The questions presented are those which arise on the pleadings. It appears by the complaint that the plaintiff is an infant, the son and only child and heir-at-law of one Catherine A. Valentine; that on and prior to the 22d of November, 1883, she was seized in fee of, and resided on certain premises, consisting of a house and lot, known as No. 19 Cranberry street, in the city of Brooklyn; that in 1881 one Richardt was recommended to and employed by her as a competent physician; that she owned considerable property, and supported her father, mother and brother; that

Richardt, soon after his employment, entered upon illicit rela-
tions with her and obtained control over her mind and prop-
erty; "that thereupon a great change came over her; she
compelled her relations to leave her home and refused to see
them or her former friends, and remained completely excluded
to everyone except Richardt;" that on or about January 7,
1886, she "being of unsound mind and incompetent to manage
herself or her affairs, in consequence of the influence exerted
over her by Richardt, he, fraudulently taking advantage
thereof, obtained from her a deed, dated that day, reciting a
consideration of $15,000, and conveying to him the above-
described premises, but he, in fact, paying no consideration
therefor; that the deed was recorded on the 17th of June,
1886, and on the 27th of October, 1886, by deed of that date,
and recorded October twenty-ninth, Richardt conveyed the
premises to Susan A. Austin for the sum of $12,000, which
she paid; that Mrs. Valentine, until that time, continued to
reside on the premises, but then left and "moved to the city
of New York;" that Austin, by mortgage, dated October 1,
1887, recorded October 3, 1887, conveyed the premises to the
defendant Lunt "to secure the payment of $9,000 advanced
to her by Austin; that Richardt continued to maintain com-
plete dominion over the mind and property of Mrs. Valentine.
until her death, which occurred January 9, 1888.

The judgment demanded is, that the deed to Richardt of
June seventh, the conveyance to Mrs. Austin of October
twenty-seventh, and the mortgage to the defendant Lunt of
October 1, 1887, be declared void, and that they be delivered
up to be canceled.

The defendant Lunt, by answer, admitted the original title
of Mrs. Valentine, the several conveyances, and the mortgage
to herself, but denied all the allegations which tended to show
the invalidity of either, or which, if admitted, would form any
basis for the relief sought.　She then, for a further and sepa-
rate defense, alleged that, on the third of October, she loaned
Mrs. Austin $9,000, and took therefor her bond, secured by a
mortgage on the premises in question; that Mrs. Austin was

then the owner of the premises, and in actual possession thereof, and had been in such possession since the 29th of October, 1886, under the deed from Richardt; that the money was loaned, relying upon this ownership and possession, in good faith and without any knowledge or notice whatever of the mental condition of Mrs. Valentine or the fraud or undue influence claimed by the plaintiff to have been practiced or exerted by Richardt upon her.

The plaintiff demurred to this last defense on the ground that it did not show facts sufficient to constitute a defense. At Special Term the demurrer was sustained upon the ground that undue influence by Richardt in procuring the deed rendered it void and took away all support to the defendant's mortgage, and the General Term affirmed the Special Term decision upon the ground that the deed to Richardt was void because of the unsound mind of Mrs. Valentine. We are of opinion that the Special Term has given the right interpretation to the complaint and that the learned counsel for the defendant is justified in his contention that in framing it the pleader did not intend to, and does not charge that Mrs. Valentine was insane. "Being insane" is a general statement or conclusion dependent upon other allegations, and is qualified not only by the averments which precede, but by those which follow it. They do not justify the conclusion. The plaintiff nowhere alleges that Mrs. Valentine "was insane," or "a lunatic," or "a person of unsound mind," but states an opinion formed by himself from certain circumstances. To say that a person, "being insane," does an act cannot be considered as an allegation as to the condition of that person or regarded as presenting an issuable fact or ground for relief. The pleading is no doubt to have a reasonable intendment, and is to be construed liberally, but still "with a view of substantial justice between the parties," and that will be promoted by requiring the pleader to present, without ambiguity, the facts on which he relies for judgment. That has been done in the case before us; it is the influence exerted on Mrs. Valentine by Richardt and the fraudulent advantage taken of it to obtain

from her a conveyance of the premises without payment of any consideration, although the conveyance recited it to be $15,000. The fact alleged is that she was coerced and imposed upon, and not that she was of "unsound mind." Her mental condition is referred to as rendering her susceptible to influence, and not as a fact to be met and answered. It is, we think, not put in issue by the pleadings, and it is impossible from the scope of the complaint to make out that such an averment could stand upon the circumstances stated by the plaintiff. We, therefore, do not decide how the rights of the parties would be affected by an allegation and proof that the grantor was, at the time of the execution of the deed to Richardt, " a person of unsound mind." As the case is now presented, we do not regard that question as before us. It is not suggested in any way that the defendant Austin has been guilty of any fraud or unfair practice, or want of care leading to the commission of fraud by Richardt; on the contrary, both Mrs. Austin and Mrs. Lunt are declared to be wholly innocent in the matter, yet the general claim for the respondent is that inasmuch as the deed to Richardt should be declared invalid because of the advantage taken by him, as if it concerned himself alone, the subsequent conveyance to Austin and her mortgage to Lunt must be canceled. All this seems contrary to natural justice and reason and it is opposed, we think, to those rules and principles of established equity by which courts are governed in cases of this nature. It certainly is not a matter of course for a court of equity to set aside and declare a conveyance so obtained to be void, and transactions depending upon it invalid. When its jurisdiction is invoked for that purpose it applies the maxim that he who seeks equity must do equity. In the case before us the money was loaned by Mrs. Lunt on the faith and credit of a title, ownership and possession, which the grantor had conferred upon the mortgagor. As against the defendant, therefore, an innocent and *bona fide* mortgagee, the grantor and those in privity with her are estopped from denying that the apparent title was the real and true title.

The mortgage is good upon its face ; the records and the possession of the property by the mortgagor show that she had a right to execute it, and that is enough, in the first instance, to sustain its validity. To show its invalidity the plaintiff sets up collateral matter nowhere appearing of record, or to have been brought to the attention of the mortgagee. It is unavailing. The deed from the plaintiff's ancestor conveyed an estate in fee simple to her grantee, and when recorded it was, as to all persons acquiring rights, under it, clothed with all the guaranties which the law can bestow. It was transferable by deed, and the purchaser acquired all the rights of an owner. He might again sell or mortagage it, and to one receiving it as purchaser, or as security without knowledge of any secret fraud, it was free from any taint which as between the original parties might have infected their transaction. Whatever might be their guilt or condition, a court of equity will not visit its consequences upon him.

" The law," says Chief Justice K<small>ENT</small>, " has always had a regard to derivative titles when fairly procured, and though it may be true, as an abstract principle, that a derivative title cannot be better than that from which it was derived, yet there are many necessary exceptions to the operation of this principle." (*Jackson* v. *Henry*, 10 Johns. 184.) In the case of fraudulent conveyances, which the statute declares to be " utterly void," it has been well settled " that a purchaser for a valuable consideration, without notice, has a good title, though he purchases from one who has obtained his title by fraud." (*Jackson* v. *Henry, supra.*) " He may not only convey the property, but he may deal with it as owner, and may mortgage it, and whoever purchases the property, or takes a mortgage thereon from him or under him in good faith for value, or deals with him in good faith in reference thereto, will be protected against the claims of the defrauded vendor."

In *Miller* v. *Zeimer* (111 N. Y. 441), cited by the respondent, the purchaser of a mortgage was allowed to recover the

amount actually paid by him, although the mortgage was, as between the parties, usurious, and, therefore, by the statute, absolutely void. But the purchaser had taken the security on the representations of the mortgagor as to its validity, and he was held to be estopped from setting up the defense. So far as this case has any application, it favors the defendant, for it shows that one acting in good faith will be protected, although the mortgage is, by the literal terms of the statute, invalid.

The other cases cited by the learned counsel for the plaintiff do not require a different judgment in this case. So far as they are from the courts of this state and are at all pertinent, they are *Riggs* v. *American Tract Society* (84 N.Y. 330; 95 id. 503); *Fisher* v. *Bishop* (108 id. 25); *Van Deusen* v. *Sweet* (51 id. 378, 382). In *Riggs* v. *American Tract Society*, upon each occasion it was brought before the court by the defendant, who had induced a gift or contract from one known to be under a delusion; in *Fisher* v. *Bishop* the action was in equity to cancel a bond and mortgage procured by fraud and undue influence practiced by the defendant, who had induced the plaintiff by its execution to secure a debt due from another person, but for which the mortgagor was in no sense responsible. The plaintiff succeeded at Special Term (36 Hun, 112), but, upon appeal, the judgment was modified by requiring the plaintiff to repay to the defendant the sum of $1, which it appeared had been actually paid by him as a consideration. *Van Deusen* v. *Sweet* was an action to recover possession of real property, both parties claiming under a common source of title, the plaintiff under his father's will, the defendant as tenant of the plaintiff's brother, who claimed under a deed from the same father. No equitable relief was sought, and the terms on which such relief might, if at all be given, were not the subject of consideration. Some other cases have been cited involving the rights of an assignee of a non-negotiable chose in action, as *Barry* v. *Equitable Life Assurance Society* (59 N Y. 587); *Loomis* v. *Ruck* (56 id. 462.) They have no application. Such an assignee stands in

the place of his assignor, and is in no better position; he is put upon inquiry and is affected by all the rights and equities of the original owner, and, indeed, he must always abide the case of the person from whom he buys.

In the case before us, if it be assumed that, as between Richardt and the plaintiff, the deed of Mrs. Valentine was void, because obtained by undue influence or fraud, or by advantage taken of her condition, the title of Mrs. Austin to the property would still be good. If there be any concealed defect arising from the conduct of those who had held the property before she acquired it, of which she had no notice, that defect cannot prevail against her. (*Simpson* v. *Del Hoyo*, 94 N. Y. 193.) She is conceded to have been a purchaser for a valuable and full consideration, without notice of any fraud vitiating the title of Richardt, and it necessarily follows that the defendant Lunt, who in perfect good faith, in actual ignorance of any fraud or circumstances tending to show fraud on the part of any one connected with the title, advanced her money in reliance upon the record title, and possession corresponding to that title, should not be required to give up her mortgage security except upon payment. This the plaintiff does not propose to make. If the deed to Richardt is, as the plaintiff contends, absolutely void, this action was unnecessary. If it was necessary, then the plaintiff must submit to rules by which courts of equity are guided. The judgments of the Special and General Terms do not conform to them. They should, therefore, be reversed and the demurrer overruled, with costs in all courts to the defendant Lunt.

All concur.

Judgments reversed and demurrer overruled.