88  115<br>12ap198

ARTHUR J. BALDWIN, Respondent, *v.* MARIA GOLDE and Others, Appellants.

*Possession of land by a son, dwelling with his father who holds the record title — not constructive notice as to oral agreements between them relating to the land — deed of a person of unsound mind — burden of proof — action of ejectment — defense that the plaintiff's grantor was a lunatic — who may interpose it.*

Where a son lives in his father's family, and to all appearances bears only such relation to the property upon which the family resides as a son would have who had not departed from the family hearth, the father having the record title to the property, the inference is that the son's possession is under and in subordination to the father's title, and a purchaser of the property from the father is not charged with constructive notice, by reason of the residence of the son upon such property, of any verbal agreement made between the father and son in respect thereto.

The deed or contract of a lunatic or person of unsound mind, made before inquisition of lunacy found, is not void where it is executed for a valuable consideration received by the lunatic and the other party to the contract or conveyance has no knowledge or notice of his mental infirmities.

Where an action is brought to set aside the deed or contract of an alleged lunatic, the burden of proof may be one way or the other according to the circumstances, but ordinarily the burden rests upon those who allege the unsoundness of mind to establish the facts necessary to avoid the instrument, and the want of equity in the transaction, and notice to the party dealing with the lunatic of his mental condition.

No transaction with a lunatic is void, unless it is void as to both parties, so that either may set it aside.

In an action of ejectment, where the wife and children of the plaintiff's grantor occupied the premises, the possession of which it was sought to recover, the grantor's wife and children, if he be living, are strangers to his title and cannot allege as a defense to the action that he was a lunatic at the time of the giving to the plaintiff of a deed of the property.

APPEAL by the defendants, Maria Golde and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 12th day of May, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the Erie Circuit adjudging the plaintiff to be the owner in fee of certain real estate and awarding him the possession thereof.

*W. B. Simson*, for the appellants.

*Leonard D. Baldwin*, for the respondent.

WARD, J. :

The premises sought to be recovered by the plaintiff in this action were village lots 71, 72 and 73, and parts of 69 and 70, in the village of Tonawanda, and also lot 74. All, except lot 74, had been conveyed by the owner in possession in 1884 to Christian Golde, the husband of the defendant Maria, and the father of Cornelius, Herman and Thomas Golde, the other defendants. Lot 74, in 1885, had been conveyed by the owner to Christian Golde and Maria, his wife, as tenants by the entirety. Christian went into possession of all these lots under the deeds, and continued such possession until January, 1893, when he sold and conveyed the premises by warranty deed to the plaintiff for a valuable consideration of $965. The wife and sons of Golde occupied the premises with him as a part of his family. Christian Golde, after the sale, departed from the State, leaving the family in possession of the premises. The plaintiff demanded possession of them and was refused, and brought this action to recover the premises. The defendants all answered, alleging, first, that the defendant Cornelius Golde had constructed a house and barn upon the lots after his father had purchased them and before the deed to the plaintiff, at the cost of about $1,200, under a verbal arrangement with his father that the father should execute a mortgage to him for the cost of the buildings, and until he did so Cornelius was to live on the premises with his father free of rent, which should offset the interest that would accrue on the cost of the buildings; that the plaintiff knew of this arrangement at the time of his purchase. The defendants further answered that Christian Golde and the plaintiff had entered into a fraudulent

arrangement whereby the plaintiff was to purchase the premises for less than they were worth, in order to defraud Cornelius Golde of his rights in the premises, and that the said Christian Golde, at the time of the execution and delivery of the deed to the plaintiff, " was of unsound mind, was mentally incompetent to transact business and to deed real property, and was so far deprived of his reason and understanding as to be altogether unfit to manage his affairs; " and that the plaintiff at that time was aware of such condition of Christian Golde, and procured him to execute the deed to the plaintiff for a consideration much less than the actual value, " with the intent to defraud such Christian Golde and said Cornelius Golde of their respective rights and interests in said premises."

Upon the trial the plaintiff gave testimony tending to show that he was a purchaser in good faith and for value, and had no notice of any claim or equity of Cornelius Golde or any knowledge or notice of any unsoundness of mind of Christian Golde, and that he was protected by the Recording Acts in his title.

The defendants offered to show the contract as to the buildings and the verbal mortgage alleged in the answer between Christian Golde and Cornelius, without offering to show any knowledge in or notice to the plaintiff of the same. This evidence was excluded under objections made, and the defendants excepted, and then the defendants offered to show " that at the time of the execution of the deed of Christian Golde to Arthur J. Baldwin (the plaintiff) that he was of unsound mind and incompetent to transact business or to give the deed in question." This was objected to and excluded and the defendants excepted. There was no offer by the defendants to prove, or proof given of, any knowledge in or notice to the plaintiff of the matters embraced in this offer.

The evidence was closed and, each party asked the court for a direction of a verdict in his favor respectively. The court dismissed the complaint as to lot 74 and directed a verdict for the plaintiff as to the other lots.

The questions before us come here upon the two exceptions taken by the defendants. The first exception as to the equitable claim of Cornelius Golde is clearly untenable. It was a private arrangement between the father and the son, of which the plaintiff had no notice or knowledge. The counsel for the appellants claims that Cornelius

Golde was in such possession of the premises as gave constructive notice of his rights. He was living in his father's family, and to all appearances bore only such relations to the property as a son in the family would have who had not departed from the family hearth. The father had the record title, and the inference was that the son's possession was under him and in subordination to that title. (*Pope* v. *Allen,* 90 N. Y. 298.)

The other exception is more formidable and involves a question about which there is confusion in the authorities and which has been much considered and discussed in the courts of this State. The defendants were strangers to the title of Christian Golde (although his wife and children). Until his decease they had no more right to the possession of the premises as against this grantee than any other person who might enter upon the premises wrongfully and hold them against the plaintiff, and the appellants' counsel here takes the bold position that any person in possession of real estate, even if such possession be wrongful, may hold it against the grantee of one having lawful and record title, by showing the insanity of his grantor as a fact upon the trial of an action brought by the grantee who purchases in good faith and for value, and without notice of the insanity, and he cites in support of this position *Van Deusen* v. *Sweet* (51 N. Y. 378). That was a case where a parent had deeded to his son-in-law, without consideration, certain premises, and had also devised the same premises by will to his daughter. The daughter sued to recover the premises, alleging the deed void to the son-in-law upon the ground of the insanity of the father, and the court held that a deed by one *non compos mentis* is absolutely void, and where a defendant in an action to recover the possession of real property claims under such a deed the fact of the incapacity of the grantor may be shown by the plaintiff to defeat such claim, although no fraud is alleged and such incapacities have not been legally or judicially determined at the time. This decision was made by the Commission of Appeals, and it will be observed that the parties to the action had notice of the mental condition of the father, and neither of them was a purchaser for value. He also cites *Goodyear* v. *Adams* (5 N. Y. Supp. 275). That was a family controversy, where one party claimed under a deed and another under a will, where the mental condition of the grantor was known to the parties

and where there was an allegation of fraud as to the obtaining of the deed. The deed was held void in that case, but the court says : " It was not shown that the deed was for the benefit of Joshua (the grantor), or was taken in good faith, or for adequate consideration," but obtained by fraud.

He cites also *Aldrich* v. *Bailey* (132 N. Y. 85). That case came before the court on a submission of facts as to whether a contract was void for insanity of one of the contracting parties. In referring to the case of *Van Deusen* v. *Sweet* (*supra*) Judge HAIGHT says : " Assuming, for the purposes of this case, that the rule is there correctly stated, and that a deed would be not merely voidable, but absolutely void, when executed by an insane person, yet under the rule in that case a deed is absolutely void only when it appears that the person executing it was at the time so deprived of his mental faculties as to be wholly, absolutely and completely unable to understand or comprehend the nature of the transaction."

The judge further says (in speaking of the case before him) : " No allegation appears as to the extent to which the mind was unsound, or as to whether it was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction."

Judged by this standard the answer of the defendants falls short of alleging such a mental condition in Christian Golde as would make his deed void. That answer alleges that he is capable of committing a fraud upon his son with the plaintiff, and at the same time charges him with incapacity to carry out the fraud. The offer of proof under the answer we are now considering falls short of this rigid standard, and we might repose upon this distinction and sustain the ruling of the trial court without further investigation, but we will consider a few other cases and authorities and assert what we regard to be the true rule established by them. But before doing so we will notice another case cited by the appellants. ( *Valentine* v. *Richardt* (3 N. Y. Supp. 906), also reported as *Valentine* v. *Lunt* (51 Hun, 544). In that case Mrs. Valentine, being the owner of considerable real estate and an invalid, employed a physician, one Richardt, who obtained such influence over her that he established illicit relations with her and by most villainous contrivances and fraud induced her to deed to him her real estate, and after recording the deed bor-

rowed considerable money on the strength of his record title of innocent persons, and executed mortgages to them. Upon the death of Mrs. Valentine her son brought an action in equity to set aside the mortgages and deed (making the mortgagees parties), alleging the fraudulent methods of Richardt, and that his mother when she executed the deed was of unsound mind and incompetent to manage herself or her affairs. The General Term of the second department held the deed and mortgages void as against even the innocent mortgagees. Upon appeal to the Court of Appeals this judgment was reversed (115 N. Y. 496), the court holding that the innocent mortgagees should be protected notwithstanding the fact of the mental condition of Mrs. Valentine and fraud practiced upon her.

Blackstone says (2 Com. 291) that "idiots and persons of nonsane memory, infants and persons under duress, are not totally disabled either to convey or purchase, but *sub modo* only, for their conveyances and purchases are voidable, but not actually void."

Kent says (2 Com. 451) : " The general rule is that sanity is to be presumed until the contrary be proved, and, therefore, by the common law, a deed made by a person *non compos* is voidable only and not void."

In *Matter of Richard Beckwith, a Lunatic* (3 Hun, 443), the General Term of the fourth department says : " A contract with a person not known to be of unsound mind, and who has not been found, upon a commission *de lunatico inquirendo*, to be insane, may be sustained if it shall be proved to have been fairly made and without advantage being taken of the lunatic." In *Fitzhugh, Committee, etc.,* v. *Wilcox,* Judge JOHNSON, speaking for the General Term of the seventh district (12 Barb. 237), says, in a case where an alleged lunatic had been a contracting party : " The distinction between the void and voidable contracts of a lunatic does not appear to be entirely settled upon authority, but I apprehend it will be found to be substantially this, that the deeds and contracts of a lunatic made before office found are not void but voidable, while those made afterwards are absolutely void."

In *Riley* v. *The Albany Savings Bank* (36 Hun, 519), where it was alleged that an insane person had deposited money in a bank, the court says, at page 519 : " An executed contract, made in the usual course of business and founded upon a valuable consideration,

cannot be set aside by one of the parties thereto, nor by his representatives after his death, on the ground of his unsoundness of mind when he has received the benefit stipulated in the contract and the other party has no notice of his incapacity and was guilty of no fraud or imposition." (Citing *Mutual Life Insurance Company* v. *Hunt*, 79 N. Y. 541, and other cases.) This case was affirmed, without opinion, in 103 N. Y. 669.

Many other cases might be cited to the same effect, and the rule they establish is this : That the deed or contract of a lunatic or person of unsound mind, made before inquisition of lunacy found, is not void where it is executed upon a valuable consideration received by the lunatic and the other party to the contract or conveyance had no knowledge or notice of his mental infirmities.

The burden of proof may be one way or the other in such cases according to the circumstances, but ordinarily the burden is upon those who allege the unsoundness of mind to establish the facts to avoid the instrument, and the want of equity in the transaction, and notice to the party dealing with the lunatic of his mental condition.

No transaction with a lunatic is void unless it is void as to both parties, so that either could set it aside. No one would claim that the plaintiff in the case before us could assert the absolute invalidity of the deed he received and ask for a restoration of the consideration he has advanced for it. The deed, therefore, at best being only voidable and the offer of proof as to the grantor's mental condition not being accompanied by any proof or offer to prove notice to the plaintiff, the trial court was right in rejecting the evidence and the exception was not well taken.

The respondent makes a point that the defendants in this case are strangers to the title of Christian Golde and cannot litigate here the question of his sanity. This position is supported both by reason and authority. It must be remembered that Christian Golde was not dead at the time of the trial, so that any rights that he may have had did not devolve upon his widow and children.

In *Ingraham* v. *Baldwin* (9 N. Y. 45) evidence to show that a mortgagor, at the time he executed the mortgage, was a lunatic was offered against a mortgagee in good faith and without notice. The evidence was excluded, and the Court of Appeals says that the

122 PEOPLE ex rel. W. N. Y. & P. R. R. CO. *v.* ADAMS.

Fifth Department, June Term, 1895. [Vol. 88.

mortgage was only to be avoided at the election of the lunatic, or his personal representatives or those claiming some interest under him in the premises; that a lunatic was not absolutely disqualified from making a contract, and the court concludes : " Again, there was no privity between the defendant and the mortgagor shown or proposed to be shown.  *  *  *  A stranger would have no more right to insist upon the insanity of the mortgagor to avoid a security executed by him than upon his infancy." The same principle is asserted in *Jackson ex dem. Merritt* v. *Gumaer* (2 Cow. 552).

The questions of fact in the case are all found with the plaintiff by the court, as both parties asked for a direction of a verdict.

The judgment should be affirmed.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Judgment affirmed.